**R & R MARINE, INC. a/k/a R & R Marine Fabrication & Drydock, Appellant**

v.

**MAX ACCESS, INC., Appellee.**

No. 09–11–00396–CV.

Court of Appeals of Texas, Beaumont.

Submitted April 12, 2012.

Decided July 26, 2012.

Jack G. Carnegie, Debra W. Biehle, F. William Mahley, Strasburger & Price LLP, Houston, for appellant.

George T. Jackson, Daniel R. Dutko, Burck, Lapidus, Jackson & Chase, Houston, for appellee.

Before GAULTNEY, KREGER, and HORTON, JJ.

## OPINION

CHARLES KREGER, Justice.

Appellant, R & R Marine, Inc. challenges the trial court's rendition of partial summary judgment in favor of Max Access, Inc.[1] and the trial court's order granting Max Access's Motion to Sever and Enter Judgment. We reverse the trial court's order partially granting sum-

---

1. Praetorian Insurance Company is Max Access's subrogated insurer and the real party in interest in this case.

mary judgment and order granting the motion to sever and enter judgment and remand this case to the trial court for further proceedings.

## I. Factual and Procedural Background

Max Access filed suit against R & R Marine, Inc. a/k/a R & R Marine Fabrication & Drydock ("R & R Marine") in Harris County, Texas seeking indemnity for losses it incurred in connection with two personal injury claims filed against Max Access.[2] The Harris County Court transferred venue of the case to Jefferson County. Thereafter, Max Access filed an amended petition and added R & R Marine Offshore, Inc. ("R & R Offshore") as a defendant.[3] Plaintiff's petition alleged that R & R Marine "and/or" R & R Offshore executed a rental contract with Max Access that included an indemnification clause.

Max Access filed a traditional motion for summary judgment. The trial court granted partial summary judgment on liability against R & R Marine, Inc. for "defense costs and for the costs of settlement for all monies paid to settle" the claims of one of the parties in the personal injury lawsuit. The trial court's order did not award damages in favor of Max Access, but provided that "[t]he Court will hold a hearing to determine the final amounts owed." Thereafter, Max Access filed its "Motion to Sever and to Enter Final Judgment." Among other things, the motion requested the trial court to enter a final judgment in favor of Max Access against R & R Marine for the sum of $1,152,082.97. Over R & R Marine's objections, the trial court granted Max Access's motion, severed the claims made by Praetorian Insurance Company, as the real party in interest of Max Access, Inc.'s indemnity claims against R & R Marine based on the claims in the Guzman litigation, and ordered judgment entered in favor of Praetorian for $1,152,082.97.[4]

## II. Standard of Review

■ We review a trial court's summary judgment under a de novo standard of review. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 848 (Tex.2009). When a plaintiff moves for summary judgment, it must conclusively prove all elements of its cause of action as a matter of law. Tex.R. Civ. P. 166a(c); *Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 566 (Tex.2001). We consider whether the movant carried its burden to show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Haase v. Glazner,* 62 S.W.3d 795, 797 (Tex.

**2.** According to the pleadings from the underlying personal injury lawsuit, on November 16, 2007, Gonzalo Garcia–Gomez and Guillermo Guzman, were performing their duties for their employer on a drilling rig near Sabine Pass, Texas. To perform their duties they used a work basket that was suspended by a cable. Max Access supplied the work basket and cable. The lawsuit alleged that a defect in the work basket or cable allowed the cable to detach from the work basket, and caused the basket to fall into the water. Gomez died and Guzman was seriously injured. Guzman filed suit against Max Access in Cause No. E–180,822, *Guillermo Guzman v. Max Access, Inc.,* in the 172nd Judicial District Court of

Jefferson County, Texas. Gomez's survivors intervened in that lawsuit, and added the work basket manufacturer as a defendant.

**3.** While Max Access's petition alleges that R & R Marine Offshore, Inc. had been served and cited to appear, there is no evidence in the record before us that R & R Marine Offshore, Inc. was ever actually served with this lawsuit.

**4.** The trial court also awarded Praetorian $7,500 for appeal to the court of appeals and another $10,000 for an appeal to the Texas Supreme Court.

2001). In our review, "we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 157 (Tex.2004).

### III. Max Access's Motion for Summary Judgment

#### A. Correct Entity

R & R Marine contends Max Access did not prove as a matter of law that R & R Marine rented the work basket from Max Access, or that it entered into an agreement to indemnify Max Access. Max Access responds that R & R Marine waived this argument by not presenting it to the trial court, and by failing to file a plea in abatement to object to the misnomer.

#### 1. Preservation of Error

First, we consider the issue of waiver. Summary judgments must stand on their own merits, and the nonmovant's lack of response does not negate the movant's burden of proving entitlement to summary judgment as a matter of law. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). A non-movant is not precluded from asserting on appeal that the grounds presented to the trial court in the movant's motion for summary judgment are insufficient as a matter of law to support the motion. *Hammond v. Katy Indep. Sch. Dist.,* 821 S.W.2d 174, 177 (Tex.App.-Houston [14th Dist.] 1991, no pet.).

Regardless, the record reflects that R & R Marine argued to the trial court that it never entered into a contract with Max Access to rent the work basket. R & R Marine claimed that someone with R & R Offshore ordered the work basket, that Max Access delivered the work basket to R & R Offshore's job site, and that R & R Offshore's employees used the work basket in the course of performing their duties for R & R Offshore. R & R Marine further argued that "[b]ecause R & R Marine, Inc. had never entered into any indemnification contract with Max Access, R & R Marine, Inc. declined to [defend and indemnify Max Access in the lawsuit]." We find this issue to be without merit.

Max Access asks us to find that its filing suit against R & R Marine, instead of R & R Offshore, amounted to a misnomer, and as such, R & R Marine should have filed a plea in abatement to correct the error. However, Max Access's error is not a misnomer, but rather a misidentification. A misnomer occurs when the plaintiff sues and serves the correct defendant, but misnames the defendant.

A misnomer differs from a misidentification. Misidentification—the consequences of which are generally harsh—arises when two separate legal entities exist and a plaintiff mistakenly sues an entity with a name similar to that of the correct entity. A misnomer occurs when a party misnames itself or another party, but the correct parties are involved. Courts generally allow parties to correct a misnomer so long as it is not misleading.

Typically, misnomer cases involve a plaintiff who has misnamed the defendant, and a petition involving this type of misnomer is nonetheless effective, for limitations purposes, when filed, with any subsequent amendment relating back to the date of the original filing. Courts are flexible in these cases because the party intended to be sued has been served and put on notice that it is the intended defendant.

*In re Greater Houston Orthopaedic Specialists, Inc.,* 295 S.W.3d 323, 325 (Tex. 2009) (orig. proceeding) (per curiam) (footnotes and citations omitted). Here, two

separate legal entities exist—R & R Marine, Inc. and R & R Marine Offshore, Inc. R & R Marine, Inc. was named as a defendant and served.

■■■ Max Access argues that "one of the R & R Marine entities ordered the Basket and entered into the Rental Contract[,]" and "[s]ince Max Access sued all of the R & R Marine entities, then Max Access sued the correct entity." Max Access claims that it served R & R Offshore with the second amended petition. However, we find no evidence in the record that Max Access served R & R Offshore with the lawsuit, nor does Max Access cite to anything in the record to support its claim that it completed service. Therefore, although Max Access named defendant R & R Offshore in the amended petition, R & R Offshore would not become a party to the lawsuit until it was served citation. *See Mapco, Inc. v. Carter,* 817 S.W.2d 686, 687 (Tex.1991) (citing Tex.R. Civ. P. 124). R & R Marine properly preserved this issue for review and was not required to file a plea in abatement to correct Max Access's error.

## 2. Genuine Issue of Fact Regarding Correct Entity

Concluding that R & R Marine properly preserved this issue for review, we next determine whether Max Access's motion for summary judgment was adequate to prove that R & R Marine rented the work basket from Max Access.

To succeed on summary judgment, Max Access must prove there is no genuine issue of material fact that R & R Marine executed the contract of indemnity. Max Access filed its original petition only against R & R Marine, wherein it alleged that "[R & R Marine] executed a contract of rental with [Max Access] including an indemnification clause." In its second amended petition, Max Access added R & R Offshore as a defendant. Throughout the second amended petition Max Access alleged that "[R & R Marine, Inc.] and/or [R & R Marine Offshore]" executed a rental contract with Max Access. Max Access used the "and/or" construction throughout its petition in referencing these two entities' roles in key events to this litigation.[5] R & R Marine argues essentially that this construction is vague and ambiguous as to which entity Max Access alleges actually rented the equipment or agreed to indemnify Max Access. We agree.

To further complicate the pleading ambiguity, Max Access's motion for summary judgment is equally imprecise regarding

5. Commenting on the use of the phrase "and/or" in pleadings, this Court has previously expressed the view:

[W]e add our disapproval to that already heaped upon the overworked phrase. We note particularly that "the courts are unanimous in condemning the use of the term 'and/or' in pleadings." If plaintiffs' counsel meant the conjunctive, he should have employed the word "and"; but, if he meant to express the disjunctive, he should have used the word "or." Having used both, he expressed neither. Plaintiffs violated Texas Rules of Civil Procedure, rule 45(b), in that the pleading did not "consist of a statement in plain and concise language of the plaintiff's cause of action."

*Willis Sears Trucking Co. v. Pate,* 452 S.W.2d 782, 784 (Tex.Civ.App.-Beaumont 1970, no writ); *see also Christus Health Se. Tex. v. Broussard,* 306 S.W.3d 934, 938 & n. 1 (Tex. App.-Beaumont 2010, no pet.); *Am. Gen. Ins. Co. v. Webster,* 118 S.W.2d 1082, 1084 (Tex. Civ.App.-Beaumont 1938, writ dism'd) ("[T]o our way of thinking the abominable invention, 'and/or,' is as devoid of meaning as it is incapable of classification by the rules of grammar and syntax."). *See also* Bryan A. Garner, *Legal Drafting: Purging the Dirty Dozen in* Garner on Language and Writing 180, 180–81 (2009).

which entity it contends was the contracting party. Max Access lumps the two entities together, defining them as "Defendants" or "R & R Marine Offshore." Max Access contends that it "rented to Defendants" a work basket, that "Defendants signed the Rental Contract" and that "Defendants and Max Access entered into a rental contract." Max Access further claimed that the "Rental Contract agreed to by Defendants contains an indemnity provision...."

R & R Marine produced evidence that R & R Marine and R & R Offshore are two separate entities. Max Access did not present evidence that both R & R Marine and R & R Offshore jointly entered into a contract with, or rented equipment from, Max Access. To establish privity of contract, Max Access must show which entity, if either one, entered into the rental agreement.

To support its motion for summary judgment, Max Access relies on the delivery ticket for the work basket, the invoice for the work basket, the check from R & R Marine paying for the rental of the work basket, prior invoices from R & R Marine, Inc., an affidavit from Pedro Acosta, and an affidavit from Max Cammack. The delivery ticket identifies the customer as "R & R Marine" with no indication as to whether this is R & R Marine, Inc. or R & R Marine Offshore, Inc. The ticket was signed by Pedro Acosta.[6] There is evidence in the record that Acosta was an independent contractor for R & R Offshore, not R & R Marine. While Max Cammack's affidavit states that the rental contract was "entered into between [Max Access, Inc.], and [R & R Marine, Inc.]," according to Max Access's own invoice, the rental of the work basket was billed to "R & R Marine Offshore, Inc." The invoice further indicates that the work basket was

shipped to the job address of "R & R Marine Offshore, Inc." Cammack further testified that Max Access's operations manager, Bruce Vanvalkenburg, dealt with R & R Offshore, in taking the order for the work basket.

█ Keal Woodruff, an owner and officer of R & R Marine and R & R Offshore, also testified that R & R Offshore, not R & R Marine, rented the work basket. He explained that R & R Offshore is the only R & R entity that would use the work basket in its operations. Max Access submitted prior invoices, which indicate that in the past, Max Access directed invoices for rentals to either "R & R Marine Offshore, Inc." or to "R & R Marine Fabrication & Drydock." Taking as true all evidence in favor of R & R Marine, and resolving all doubts in R & R Marine's favor, we conclude that a fact issue exists regarding the proper contracting entity for the work basket. We sustain this issue.

## B. Authority to Sign Contract of Indemnity

R & R Marine also contends that Acosta did not have authority to bind R & R Marine to a contract of indemnity for either R & R Marine or R & R Offshore. Max Access responds that Acosta had actual, apparent and implied authority to enter into the rental contract.

█ "An agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority)." *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex.2007). There is no presumption of an agency relationship; rather, the party asserting agency has the burden of proving the relationship. *IRA Res., Inc. v.*

6. Both parties agree that Pedro A. is Pedro Acosta.

*Griego,* 221 S.W.3d 592, 597 (Tex.2007). "An agent cannot bind a principal absent either actual or apparent authority." *Sanders v. Total Heat & Air, Inc.,* 248 S.W.3d 907, 913 (Tex.App.-Dallas 2008, no pet.).

### 1. Actual Authority

■■■■ Actual authority includes both express and implied authority and generally represents the authority a principal intentionally confers upon an agent, intentionally allows the agent to believe he possesses, or by want of due care allows the agent to believe he possesses. *2616 S. Loop L.L.C. v. Health Source Home Care, Inc.,* 201 S.W.3d 349, 356 (Tex.App.-Houston [14th Dist.] 2006, no pet.). Actual authority is based on the principal's written or spoken words or conduct that is communicated to the purported agent. *Walker Ins. Servs. v. Bottle Rock Power Corp.,* 108 S.W.3d 538, 549–50 (Tex.App.-Houston [14th Dist.] 2003, no pet.).

■■■■ Max Access contends that Acosta was an R & R Marine worker, under the supervision, control and authority of R & R Marine at the time he signed the delivery ticket and thus had actual authority. Acosta stated in his affidavit that he "was not authorized to sign anything, and did not sign anything for R & R Marine, Inc., unless [his] supervisors at R & R Marine told [him] to sign." He further stated that he "only signed the Max Access Rental, Sales, and Service Contract because [he] was told to by the management of R & R Marine, Inc., to sign the Contract and [he] was acting under the authority of R & R Marine Inc., when [he] signed the Contract." Acosta does not state in his affidavit that he had authority to bind R & R Marine to indemnify Max Access. Also missing from Acosta's affidavit is an acknowledgment that he had knowledge that the delivery ticket contained an indemnity provision on its reverse side. Acosta's vague statement that some unidentified person in management told him to sign the contract is not sufficient to establish an agency relationship. *See Gaines,* 235 S.W.3d at 183–84 ("Declarations of the alleged agent, without more, are incompetent to establish either the existence of the alleged agency or the scope of the alleged agent's authority."). To support Acosta's affidavit, Max Access also relies on a portion of Woodruff's deposition to establish that R & R Marine had supervisors and project managers at the job site working under R & R Marine's supervision. Taken together, this evidence is still not sufficient to establish that Acosta had actual authority to bind R & R Marine.

■■ Other evidence in the record controverts Max Access's claims. Woodruff stated in his affidavit, "Acosta was a yard worker employed by Sabine Offshore Services, Inc., who was working at R & R's facility as a forklift operator pursuant to a contract between R & R Marine Offshore, Inc. and Sabine." The record also includes an invoice from SembCorp Sabine Shipyard, Inc.[7] to R & R Marine Offshore, Inc. charging for a forklift operator on the day Max Access delivered the work basket to the Sabine Pass job site. Woodruff further states, the "R & R Marine Offshore, Inc. yard personnel have no authority to bind the Company to an indemnity contract. Mr. Acosta, as a non-employee forklift operator, certainly had no authority to bind the Company to an indemnity contract or any other type of contract."

---

**7.** Woodruff testified that his references to "Simcor" and "Sabine Offshore" are to the same entity.

Woodruff explained in his deposition that even the supervisors and project managers lacked authority to sign contracts. Taking as true all evidence favorable to the non-movant, a genuine issue of material fact as to whether Acosta had actual authority to bind R & R Marine to an indemnity agreement precludes summary judgment on this issue.

### 2. Apparent or Implied Authority

Max Access next argues that Acosta at least had apparent authority to agree to a rental contract. Max Access contends this authority stems from R & R Marine's act of accepting the work basket and then operating under the terms and conditions of the rental contract. R & R Marine contends that Max Access never argued to the trial court that Acosta had apparent or implied authority, but just argued that Acosta had actual authority. However, R & R Marine's response to the trial court suggests that Max Access had argued apparent authority to the trial court. Regardless of whether Max Access sufficiently presented this argument to the trial court, we conclude that Acosta did not have apparent authority to bind R & R Marine.

▬▬▬ Apparent authority arises when a principal intentionally or negligently induces a party to believe that a person is the principal's agent though the principal has not conferred authority on that person. *Thomas Reg'l Directory Co., v. Dragon Prods., Ltd.,* 196 S.W.3d 424, 427 (Tex.App.-Beaumont 2006, pet. denied) (quoting Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Business, Consumer, Insurance & Employment* PJC 101.4 cmt. (2003)). " 'Because apparent authority is based on estoppel, the principal's conduct must be that which would lead a reasonably prudent person to believe that authority ex-

ists.' " *Id.* at 428 (quoting Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Business, Consumer, Insurance & Employment* PJC 101.4 cmt. (2003)). In making the determination of whether apparent authority exists, only the conduct of the principal is relevant. *Gaines,* 235 S.W.3d at 182. "[T]he standard is that of a reasonably prudent person, using diligence and discretion to ascertain the agent's authority. Thus, to determine an agent's apparent authority we examine the conduct of the principal and the reasonableness of the third party's assumptions about authority." *Id.* at 182–83

The Texas Supreme Court addressed the issue of apparent authority in a case with a similar set of facts as those presented here. In that case, Rourke, a rental company, delivered an unassembled scaffold to Har–Con. *Rourke v. Garza,* 530 S.W.2d 794, 797 (Tex.1975), *abrogated on other grounds by Ford Motor Co. v. Ledesma,* 242 S.W.3d 32, 45–46 (Tex.2007). Har–Con's superintendent for the area checked the delivery and signed a receipt that contained an indemnity provision on the reverse side. *Id.* at 797, 802. The front of the ticket referenced the additional terms on the reverse side. *Id.* at 802. The superintendent had once before signed a delivery ticket from Rourke. *Id.* at 803. Later, a Har–Con employee was injured when he fell between two scaffold boards and brought suit against Rourke. *Id.* at 797–98.

In determining whether the superintendent had apparent authority, a concept based on estoppel, the Court noted that it must first find that the party, claimed to be estopped, had knowledge of all material facts at the time of the conduct alleged to constitute the basis of the estoppel. *Id.* at 803. The Court explained that "[s]uch knowledge may be imputed where the par-

ty against whom the estoppel is asserted 'has knowledge or information of facts sufficient to put him upon inquiry which if reasonably pursued would lead to the discovery of the controlling fact....'" *Id.* (quoting *Champlin Oil & Refining Co. v. Chastain*, 403 S.W.2d 376, 403 (Tex.1965)).

The Court explained that the employee's apparent authority could have arisen through the course of Rourke and Har-Con's prior dealings, or through Har-Con's placement of the employee in the position of superintendent. *Id.* at 802. In examining the prior dealings between the two companies, the Court noted that it was undisputed that Har-Con's officers and agents had no actual knowledge of the existence of the indemnity provisions at the time the superintendent signed the delivery ticket. *Id.* at 803. Finding no actual knowledge, the Court further concluded that Har-Con was unaware of facts sufficient to put it on inquiry, or in a position where it ought to have been aware of the indemnity provision. *Id.* In making this determination, the Court considered that there were no discussions or negotiations regarding the indemnity provision or the terms located on the reverse side of the delivery ticket. *Id.* Further, neither the superintendent, nor any other employees located on the job site placed the order for the scaffolding, but rather someone in Har-Con's office placed the order. *Id.* There was no evidence that Rourke gave any indication to Har-Con when Har-Con ordered the scaffolding, or when it was delivered, that the delivery would be subject to additional terms. *Id.* The superintendent testified he was unaware of such provisions, and Rourke's delivery person did not indicate to the superintendent that the delivery ticket contained contractual provisions or that the ticket was intended for anything other than proof of delivery. *Id.* On these facts, the Court concluded that Har-Con and Rourke's prior dealings could not form the basis for a finding of apparent authority. *Id.*

In finding no basis for apparent authority from prior dealings, the Court then considered whether Har-Con's act in appointing the employee to a certain position created apparent authority to bind his employer to an indemnity agreement. The Court explained that "[i]n certain situations, appointing a person to a position may be sufficient in itself to create apparent authority.... However, apparent authority in such cases exists only as to those things ordinarily entrusted to one occupying such a position." *Id.* at 803–04. The Court held that, as a matter of law, the signing of a broad indemnity contract is not ordinarily a duty entrusted to a person appointed to a position of "general superintendent," "field superintendent," or "job superintendent." *Id.* at 804. The Court reasoned that the superintendent's job was to supervise and direct the work at job sites, not to acquire supplies. *Id.* There was no evidence that Rourke relied on the employee's position when the ticket was signed, and, in fact, the delivery person testified that it did not make a difference who signed the ticket, the "person could have been a mere pipefitter, so long as he worked for Har-Con." *Id.* The Court was skeptical of Rourke's claimed reliance on the employee's position when the employee had only signed one of the prior seven delivery tickets. *Id.*

Finally, the Court cautioned that "[c]ontracts indemnifying one against his distribution of defective products should be viewed as exceptions to the usual business practice" because "they may have great financial impact on the parties...." *Id.* The Court affirmed the trial court's judgment and found no evidence of apparent authority. *Id.* at 804–05.

This case is analogous to *Rourke*. In its motion, Max Access argued that its prior dealings with the R & R entities support that such entities had knowledge of the indemnity provisions on the ticket and invoice because they had "entered into the same [r]ental [c]ontract with Max Access more than twenty-five times and received (and paid) hundreds of invoices containing the same indemnity provisions." However, there is no evidence in the record that any of the R & R entities, or their agents or representatives were aware of the existence of the indemnity provision on the back of the delivery ticket when Acosta signed the ticket. The tickets were not signed by someone which the record reflects had actual authority to bind either R & R entity. Further, the fact that the R & R entities had received the same form of delivery ticket and invoice on prior occasions is not sufficient to establish, as a matter of law for summary judgment purposes, actual knowledge of the provisions on the reverse side. Woodruff testified that he had never seen the delivery tickets or read the indemnity provision, and he doubted if anyone else at R & R Marine had read the provision. He explained that when the delivery tickets and invoices came to the R & R Offshore office, they went to an accounts payable clerk, who had no authority to bind the company to an indemnity agreement.

■ Finding no evidence of actual knowledge, we likewise find no evidence in the summary judgment record that the R & R entities were aware of facts sufficient to put them on inquiry or in any position where they ought to have been aware of the indemnity provision. As in *Rourke,* the prior dealings here are not sufficient to establish apparent authority. Acosta had never signed a prior delivery ticket from Max Access. Acosta's affidavit does not state that he was aware of the indemnity

provision on the reverse side of the delivery ticket. Notably, Max Access's ticket, unlike the ticket in *Rourke,* does not reference the additional terms on the reverse side. There is no evidence in the record to support that anyone at R & R Marine or R & R Offshore, much less Acosta, knew the indemnity provision was on the reverse side of the ticket when Acosta signed for the delivery. There is no evidence that there were any discussions or negotiations between any R & R entity and Max Access regarding the indemnity provision on the ticket. Neither Acosta, nor any other employee on the job site placed the order for the work basket; the order was placed by a purchasing agent in the office. Further, there is no testimony as to what conversation actually occurred when the work basket was ordered.

*Rourke* establishes that, without further evidence of those things ordinarily entrusted to one occupying a position with a company such as "job superintendent" or "field superintendent," the signature of that person to a broad indemnity contract is not sufficient to establish apparent authority for summary judgment purposes. Here, the record is void of any competent summary judgment evidence to establish that Acosta, as a forklift operator, was entrusted to enter into indemnity agreements for a company he worked for as an independent contractor. The fact that Acosta was used as a forklift operator and allowed to sign for the delivery of materials did not create apparent authority to bind either R & R entity to an indemnity agreement. *See Rourke,* 530 S.W.2d at 804. Moreover, there is no evidence that Max Access relied on Acosta having such authority. The individuals who signed Max Access's delivery tickets varied. Some of the tickets were signed by the yard manager, and others by a welder leaderman that could not speak English. This suggests that the delivery ticket was intended for proof of

delivery, and nothing more. *See id.* at 803. Max Access has failed to show any conduct on the part of any R & R entity that would lead a reasonably prudent person, using diligence and discretion, to believe that Acosta had authority to bind either R & R entity to the indemnity agreement. *See id.* at 802.

 Max Access contends that R & R Marine's act of paying the invoice is evidence that Acosta had apparent authority to bind R & R Marine. Max Access seems to argue that R & R Marine ratified the agreement. However, the party alleged to have ratified an agreement must have knowledge of all material facts. *Id.* at 805. As indicated above, there was no evidence that either R & R entity was aware of the existence of the indemnity provision, nor was there evidence from which such knowledge could be imputed. As such, R & R Marine could not have ratified the agreement. The trial court erred in granting partial summary judgment on liability against R & R Marine, Inc. We sustain this issue.

Having sustained issues one, three and four, it is unnecessary to consider the remaining issues. *See* Tex.R.App. P. 47.1.

### IV. Conclusion

For the foregoing reasons, we reverse the judgment of the trial court granting partial summary judgment in favor of Max Access, and we reverse the trial court's order granting Max Access's Motion to Sever and Enter Judgment and remand this case to the trial court for further proceedings.

**REVERSED AND REMANDED.**