FILED
2/16/2015 1:53:00 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Consuelo Gomez

ACCEPTED
04-14-00889-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
2/18/2015 11:55:03 AM
KEITH HOTTLE
CLERK

No. 04-14-00889-CV

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
02/18/2015 11:55:03 AM
KEITH E. HOTTLE
Clerk

IN THE
COURT OF APPEALS FOR THE
FOURTH COURT OF APPEALS DISTRICT
SAN ANTONIO, TEXAS

ENDURA ADVISORY GROUP LTD.,
APPELLANT

VERSUS

DOMINIC ALTOMARE,
APPELLEE

APPEAL FROM THE 131ST JUDICIAL DISTRICT COURT BEXAR COUNTY, TEXAS
NO. 2014-CI-11780

**BRIEF OF APPELLEE,
DOMINIC ALTOMARE**

PULMAN, CAPPUCCIO, PULLEN, BENSON & JONES, LLP
Eric A. Pullen
Texas State Bar No. 24007881
epullen@pulmanlaw.com
Sarah A. Reyes
Texas State Bar No. 24088292
sreyes@pulmanlaw.com
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
(210) 222-9494 (Telephone)
(210) 892-1610 (Facsimile)
*Attorneys for Appellee,
Dominic Altomare*

IN THE
COURT OF APPEALS FOR THE
FOURTH COURT OF APPEALS DISTRICT
SAN ANTONIO, TEXAS

ENDURA ADVISORY GROUP LTD.,
APPELLANT

VERSUS

DOMINIC ALTOMARE,
APPELLEE

## IDENTITIES OF PARTIES AND COUNSEL

| | |
|---|---|
| **Appellant**:<br>Endura Advisory Group, Ltd. | **Counsel for Appellant**:<br>Douglas Clemons<br>Gay Gueringer<br>112 East Pecan Street, Suite 1420<br>San Antonio, Texas 78205 |
| **Appellee**:<br>Dominic Altomare | **Counsel for Appellee**:<br>Eric A. Pullen<br>Sarah A. Reyes<br>Pulman, Cappuccio, Pullen,<br>Benson & Jones, LLP<br>2161 NW Military Highway, Suite 400<br>San Antonio, Texas 78213 |
| **Appellee**:<br>Josh Reneau | **Counsel for Appellant**:<br>Douglas Clemons<br>Gay Gueringer<br>112 East Pecan Street, Suite 1420<br>San Antonio, Texas 78205 |

| | |
|---|---|
| **Trial Judge:**<br>The Honorable Judge Martha Tanner, Visiting Judge sitting in the 57th Judicial District, Bexar County, Texas | |

# TABLE OF CONTENTS

**Page**

IDENTITIES OF PARTIES AND COUNSEL ............................................................... i

TABLE OF CONTENTS ....................................................................................... iii

INDEX OF AUTHORITIES .................................................................................... iv

STATEMENT OF THE CASE ................................................................................. 1

ISSUES PRESENTED ........................................................................................... 3

STATEMENT OF FACTS ...................................................................................... 4

SUMMARY OF THE ARGUMENT .......................................................................... 8

STANDARD OF REVIEW ..................................................................................... 8

ARGUMENT...................................................................................................... 9

I.   The Trial Court Did Not Err in Denying Endura's Motion to Compel
     Alternative Dispute Resolution Process Because Endura Failed to
     Meet Its Burden of Proof Not Once, But Twice ...................................... 9

     A.  Reneau is an Independent Contractor, and Thus Does Not Fall Under the
         Scope of the Separation Agreement or the Arbitration Clause ............ 10

     B.  Endura's Intent as to the Separation Agreement is
         Irrelevant ............................................................................. 19

     C.  The Separation Agreement Does Not Relate to the Present
         Dispute................................................................................ 21

CONCLUSION AND PRAYER ................................................................................ 22

CERTIFICATE OF COMPLIANCE ........................................................................... 25

CERTIFICATE OF SERVICE .................................................................................. 26

# INDEX OF AUTHORITIES

**Cases**                                                                      **Page**

*Bell v. VPSI, Inc.,*
205 S.W.3d 706 (Tex. App.—Fort Worth
2006, no pet.) ............................................................................................. 11, 12, 18

*Buchoz v. Klein,*
184 S.W.2d 271 (Tex. 1944) ............................................................................. 11

*Garcia v. Huerta,*
340 S.W.3d 864 (Tex. App.—San Antonio
2011, pet. denied) ........................................................................................... 8, 9

*Grace Cmty. Church v. Gonzales,*
853 S.W.2d 678 (Tex. App.—Houston [14th Dist.]
1993, no writ) .................................................................................................. 11

*In re H.E. Butt Grocery Co.,*
17 S.W.3d 360 (Tex. App.—Houston [14th Dist.]
2000, orig. proceeding) ................................................................................... 20, 21

*In re Koch Indus., Inc.,*
49 S.W.3d 439 (Tex. App.—San Antonio
2001, orig. proceeding) ................................................................................... 9

*Jackson v. Hernandez,*
285 S.W.2d 184 (Tex. 1955) ............................................................................ 21

*McCluskey v. Randall's Food Mkts., Inc.,*
No. 14-03-01087-CV, 2004
LEXIS 9178 (Tex. App.—Houston [14th Dist.]
Oct. 19, 2004, pet. denied) (mem. op.) ........................................................... 11, 15

*McReynolds v. Elston,*
222 S.W.3d 731 (Tex. App.—Houston [14th Dist.]
2007, no pet.) .................................................................................................. 9

INDEX OF AUTHORITIES (CONTINUED)

**Cases (Continued)**                                                   **Page**

*R&P Enters. V. LaGuarta, Gavrel & Kirk, Inc.,*
596 S.W.2d 517 (Tex. 1980) ........................................................................ 20, 21

*R&R Marine, Inc. v. Max Access, Inc.,*
377 S.W.3d 780 (Tex. App.—Beaumont
2012, no pet.) ...................................................................................................... 11

*Townsend v. Univ. Hosp.-Univ. of Colo.,*
83 S.W.3d 913 (Tex. App.—Texarkana
2002, pet. denied) ................................................................................................ 11

# STATEMENT OF THE CASE

*Nature of the Case*

This is an appeal from the District Court's Order Denying Endura Advisory Group, Ltd.'s Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process and the District Court's Order Denying Intervenor, Endura Advisory Group, Ltd.'s Motion for Reconsideration of Denial of its Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process. CR 49-52. On July 28, 2014, Appellee, Dominic Altomare ("Altomare") filed his Original Petition against Josh Reneau ("Reneau") for breach of contract. CR 1-4. Altomare was a real estate broker associated with Endura Advisory Group, Ltd. ("Endura") and Reneau was a real estate agent associated with Endura; however the contract upon which Altomare's cause of action was based was entered into between Altomare and Reneau, separate and apart from Endura. Endura intervened in the trial court case and filed a Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process. CR 9-21. In this motion, Endura argued that Endura and Altomare entered into a Separation Agreement which included an Alternative Dispute Resolution clause ("ADR Clause"). CR 18. Endura further argued that the ADR Clause required abatement of the action pending in the trial court. CR 18. On October 27, 2014, the court heard arguments from both sides. Oct. RR 1-16. The court also reviewed several documents *in camera*, including the contract or agreement between Endura and Reneau. Oct. RR 14-15. On October 29, 2014, the District Court filed the judge's notes, in which the court found insufficient evidence to determine that Reneau met any criteria that would allow Endura to compel an arbitration. CR 31. On October 30, 2014, Endura filed

– 1 –

its Motion for Reconsideration of its Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process. CR 32-36. On November 7, 2014, the court held a hearing and heard arguments from both sides. Nov. RR 1-46. Once again, the court denied this Motion. CR 51-52. This appeal followed.

*Trial Court*    The Honorable Judge Martha Tanner of the 45th Judicial District Court, Bexar County, considered Endura's Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process, as well as Endura's Motion for Reconsideration of its Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process. Oct. RR 1-46; Nov. RR 1-16.

*Trial Court's Disposition*    The trial court issued orders denying both of the above Orders. CR 49-52

## ISSUE PRESENTED

1. Whether the trial court erred in denying Intervenor, Endura Advisory Group, Ltd.'s Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process and in further denying Intervenor, Endura Advisory Group, Ltd.'s Motion for Reconsideration of Denial of its Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process.

## STATEMENT OF FACTS

Altomare is a real estate broker. CR 2. Until August 2013, Altomare was a limited partner of Endura, a commercial real estate company located in San Antonio. CR 25. Reneau is a Texas real estate agent. Nov. RR 23. Reneau was, and still is, associated with Endura. CR 25. He is not a salaried employee of Endura; but instead is an independent contractor under his written agreement with Endura. Nov. RR 23-24; 41. While both Altomare and Reneau were associated with Endura, Altomare and Reneau entered into a contractual agreement (the "Contractual Agreement") to which Endura is not and has never been a party. CR 25. Under the Contractual Agreement, Altomare and Reneau, who have a long history of sharing commissions, agreed to split certain commissions to be paid to either Altomare or Reneau. CR 25. This Contractual Agreement was in effect at the time of Altomare's separation from Endura. CR 2. The dispute pending in the 131st Judicial District of Bexar County, Texas, styled *Dominic Altomare v. Josh Reneau*, cause number 2014-CI-11780 is centered solely around this Contractual Agreement to which Endura is not a party. CR 1-4. The trial case involves a simple breach of contract, stemming from four (4) real estate transactions. CR 2. Reneau has refused to comply with the terms of the Contractual Agreement by failing to pay the commissions owed to Altomare for these transactions. CR 2.

In August 2013, Altomare separated from Endura. CR 25. On or about August 19, 2013, Altomare executed a Separation Agreement relating to Endura. CR 25. As part of the Separation Agreement, Altomare released Endura from everything except certain commissions which might come due from specific transactions identified in a transaction list attached to the Separation Agreement. CR 26. The transactions at issue in the trial court case and the payments owed to Altomare under the Contractual Agreement were not identified in the Separation Agreement. CR 26. Endura has argued that because the four transactions are not listed that Altomare has no right to commissions. CR 11. However, Endura's argument is misguided as it (and Reneau) paid commissions to Altomare on transactions not listed on the transaction list. CR 41.

Despite Endura's current claim that the Separation Agreement foreclosed any further payments from Reneau or Endura to Altomare, Reneau continued to abide by the Contractual Agreement following Altomare's departure from Endura. CR 2; 15. In compliance with the Contractual Agreement, Reneau (by and through Endura) made two payments to Altomare following the execution of the Separation Agreement. CR 41. Endura made these payments on Reneau's behalf without any objection whatsoever and without any claim that the payments were barred by the Separation Agreement or the release contained therein. *See* CR 41. Endura's current

position is contrary to its conduct and that of Reneau. *See* Oct. RR 13. Any claim for alternative dispute resolution has been waived. Oct. RR 13.

Despite making two payments to Altomare following his separation from Endura, Reneau failed to make commission payments to Altomare on four separate transactions under the Contractual Agreement. CR 2; 41; *See* Nov. RR 40. Due to Reneau's failure to abide by the Contractual Agreement, Altomare was forced to file a claim against Reneau on July 28, 2014 for breach of contract. CR 1-4. On August 29, 2014, Reneau filed his Original Answer, Special Exceptions and Affirmative Defenses to Plaintiff's Original Petition. CR 5-8. On September 19, 2014, Endura filed its Petition in Intervention. CR 9-17. On October 16, 2014, Endura filed its Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process. CR 18-21.

On October 27, 2014, the Honorable Judge Martha Tanner conducted a hearing on Endura's motion. Oct. RR 1-16. Prior to the hearing, Altomare requested a copy of Reneau's agreement with Endura; however, the agreement was never produced. Oct. RR 5-6. This document was essential to show whether or not Endura's claims fall within the scope of the arbitration clause or that Reneau is entitled to the protections of the release contained in the Separation Agreement. CR 27. Endura refused to produce the very evidence it needed in order to support its

claim for arbitration; *i.e.,* its written agreement with Reneau. CR 27. This called into question the very essence of Endura's claim. CR 27. After hearing arguments from counsel but no oral testimony, the trial court conducted an *in camera* inspection of the Separation Agreement and Endura's written agreement with Reneau. Oct. RR 14. After reviewing these documents, the trial court found "insufficient evidence to determine Reneau [met] any criteria in [the] Separation Agreement" to support a motion to compel alternative dispute resolution. CR 47; Oct. RR 14.

On October 30, 2014, seeking a second bite at the same apple, Endura filed its Motion for Reconsideration of its Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process. CR 32-36. This Motion had no merit, raised no new arguments, and cited to no new evidence as alleged therein. CR 42. On November 7, 2014, the Honorable Martha Tanner conducted a hearing on this matter and once again denied the Motion after hearing testimony from Endura's witness and a principal with Endura, James Lundblad ("Lundblad").[1] Nov. RR 1-46; CR 48. Even though Endura purported to offer new evidence as to the alleged agency relationship between Endura and Reneau through Lundblad, no new evidence was presented by Endura at this second hearing. Nov. RR 5; 41. The court

---

[1] Counsel for Altomare was not informed that James Lundblad would be called as a witness for Endura until they arrived at the hearing. Nov. RR 9. Nevertheless, Endura was permitted to call this witness and elicit his testimony. Nov. RR 9-10.

signed its Order Denying Intervenor, Endura Advisory Group, Ltd.'s Motion for Reconsideration of Denial of its Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process on December 1, 2104. CR 51-52. This appeal followed.

## SUMMARY OF THE ARGUMENT

The trial court did not err in denying Endura's Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process or in denying Endura's Motion for Reconsideration of its Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process because: (1) Endura has not met its burden of showing that Reneau is an agent or that he falls under any other category that would allow the dispute in the trial court to fall under the scope of the Separation Agreement and thus the arbitration clause; and (2) the Separation Agreement does not relate to the dispute pending in trial court.

## STANDARD OF REVIEW

This Court reviews an order denying a motion to compel arbitration under the Texas Arbitration Act by applying a no-evidence standard to the trial court's factual determinations and a *de novo* standard to legal determinations. *Garcia v. Huerta*, 340 S.W.3d 864, 868 (Tex. App.—San Antonio 2011, pet. denied). When the trial

court decides a matter that involves both factual determinations and legal conclusions, the abuse of discretion standard is used in which the reviewing Court defers to the trial court's factual determinations while determining questions of law *de novo*. *Id.* at 868-69. Furthermore, a trial court's interpretation of whether a claim falls within the scope of an arbitration agreement is reviewed *de novo*. *McReynolds v. Elston*, 222 S.W.3d 731, 740 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

## ARGUMENT

### I. The Trial Court Did Not Err in Denying Endura's Motion to Compel Alternative Dispute Resolution Process Because Endura Failed to Meet Its Burden of Proof Not Once, But Twice.

A party seeking to compel arbitration must: (1) establish the existence of a valid, enforceable arbitration clause; and (2) show that the claims asserted fall within the scope of that clause. *In re Koch Indus., Inc.*, 49 S.W.3d 439, 444 (Tex. App.—San Antonio 2001, orig. proceeding). The party seeking arbitration has the initial burden to present evidence of an arbitration clause and that the asserted claims fall within the clause. *Id.* The trial court did not err in denying Endura's Motions as Endura twice failed to meet its burden of proof. CR 27; 42.

Endura did not meet its burden or present any evidence to support its demand for arbitration. CR 27; 42. Altomare does not contest the existence of an arbitration clause. CR 27. However, Endura has not shown that its claims fall within the scope of the arbitration clause or that Reneau is entitled to the protections of the release

contained in the Separation Agreement. CR 27. Even if it could meet this burden, Endura waived any claim to compel arbitration by making two payments to Altomare on Reneau's behalf after the execution of the Separation Agreement. *See* CR 41.

Endura's claims in the trial court action arise solely from its contention that Altomare released his claims against Reneau by reason of the execution of the Separation Agreement with Endura. CR 27. Yet, first, Endura has not shown with factually or legally sufficient evidence that Reneau was its agent or representative, as opposed to an independent contractor. CR 27. The Separation Agreement releases Altomare's claims against agents and representatives of Endura, but does not release his claims against independent contractors. CR 28. Also, the dispute upon which the trial court case is based, revolves around the Contractual Agreement entered into between Altomare and Reneau; it has no relation to the Separation Agreement in which the Alternative Dispute Resolution process was incorporated. CR 27.

### A. Reneau is an Independent Contractor, and Thus Does Not Fall Under the Scope of the Separation Agreement or the Arbitration Clause.

The trial court did not err in denying Endura's Motion to Compel Arbitration because Endura failed to show that Reneau is an agent or representative of Endura or that he falls under any other category that would allow the dispute in the trial court to fall under the scope of the Separation Agreement and thus the arbitration clause.

– 10 –

An agent is a person who is authorized by the principal to transact business or manage some affair on the principal's behalf. *Grace Cmty. Church v. Gonzales*, 853 S.W.2d 678, 680 (Tex. App.—Houston [14th Dist.] 1993, no writ). A person is not an agent unless he is subject to another party's control. *McCluskey v. Randall's Food Mkts., Inc.*, No. 14-03-01087-CV, 2004 LEXIS 9178, 11 (Tex. App.—Houston [14th Dist.] Oct. 19, 2004, pet. denied) (mem. op.). Therefore, absent proof of control, there is no agency. *Id.* The right to control includes the right to assign tasks, as well as dictate the means and details of the process by which the agent will accomplish the task. *Townsend v. Univ. Hosp.-Univ. of Colo.*, 83 S.W.3d 913, 921 (Tex. App.—Texarkana 2002, pet. denied). The law does not presume an agency relationship. *Buchoz v. Klein*, 184 S.W.2d 271, 271 (Tex. 1944). Generally, the burden of proving agency is on the party relying on the agency relationship. *R&R Marine, Inc. v. Max Access, Inc.*, 377 S.W.3d 780, 786 (Tex. App.—Beaumont 2012, no pet.).

On the other hand, an independent contractor has sole control over the means and methods of the work to be accomplished. *Bell v. VPSI, Inc.*, 205 S.W.3d 706, 713 (Tex. App.—Fort Worth 2006, no pet.). ***"A contract between the parties that establishes an independent contractor relationship is determinative of the parties' relationship in absence of extrinsic evidence indicating that the contract was a 'sham or cloak' designed to conceal the true legal relationship of the parties or***

– 11 –

*that despite the contract terms, the true agreement vested the right of control in the principal.*" *Id.* (emphasis added). Here, Endura's written contract with Reneau establishes that he is an independent contractor.

In the Separation Agreement, Altomare agreed to release, "any claim of any kind that relates to or involves [his] relationship or the separation of [his] relationship with the Partnership that [he] may have or acquire against the Partnership, its related entities, officers, members, partners, limited partners, employees, directors, managers, **_agents_**, trustees, administrators, representatives, subsidiaries, affiliates, successors, and assigns." (emphasis added). CR 28. The Separation Agreement does not contain the term "independent contractors" as parties subject to the release. CR 28.

In order for this dispute to arise out of the Separation Agreement, and thus fall subject to arbitration, Reneau must fall under one of the categories listed above. CR 28. Endura's witness, James Lundblad, admitted in the November 7, 2014 hearing that Reneau is not an employee, director, manager, trustee, administrator, or a corporate entity. Nov. RR 33.

To avoid this devastating fact and the language of the agreement between Endura and Reneau, Endura claims that Reneau is its "agent." Endura Brief at 13. Endura argues "the right of control [it has] over [Reneau] makes him an agent." Oct. RR 8. Endura further argues that Reneau is an agent of Endura because "he's out

– 12 –

there brokering deals for Endura as an associate vice-president with a card that says so." Oct RR 11. However, Endura has not shown any proof of required control in order for Reneau to qualify as an agent under Texas law. *See* Endura Brief at 13-17. In fact, the evidence reveals the contrary.

At the hearing on Endura's Motion for Reconsideration, Endura called James Lundblad. Nov. RR 13. At this hearing, Lundblad testified that he is aware of Reneau and that Reneau is Endura's agent and representative. Nov. RR 13. He testified further that Reneau has business cards with Endura's name on them and when Reneau is out on the field leasing and selling properties he represents himself to the public as working for Endura. Nov. RR 13.

Lundblad is a principal with Endura. Nov. RR 13. He is not an attorney and is not familiar with the legal definition of an "agent." Nov. RR 20-21. When asked whether he knew what the legal definition of an agent is, he responded, "along the lines of a person who represents others." Nov. RR 20-21. The fact that a principal with Endura simply believes that Reneau is an agent or representative of the company is immaterial. *See* Nov. RR 20-21. As Lundblad agreed, he is not an expert and this was merely his personal opinion. Nov. RR 20-21.

In fact when asked how Endura instructs Reneau as it relates to his relationships with clients and Endura, Lundblad responded that they tell Reneau, "to go ahead and put forth the best efforts to do everything he can to either sell or lease

the property for that particular client who's hired us." Nov. RR 15-16. Lundblad did not mention any specific instructions that were given to Reneau relating to the means and details of the process by which he will accomplish the task. *See* Nov. RR 15-16.

Dispositive here, Lundblad admitted under oath that Endura does not control the actual details of what Reneau does on a daily basis nor does it control the means by which Reneau conducts his daily activities. Nov. RR 22. Lundblad admitted that Endura does not give Reneau any sort of list of what he needs to do, rather it just instructs Reneau to be a good broker, be ethical, and honest as he brings in business. Nov. RR 22. The only authority to "control" the acts of Reneau in his everyday business that Lundblad mentioned was the authority of Endura to decide whether to allow Reneau to sell or lease a certain property. Nov. RR 20. Lundblad did not state that Endura controlled the details of the process Reneau used in order to complete these projects. *See* Nov. RR 20.

Lundblad further testified that he does not tell Reneau who he has to call, who he has to meet with, or when he has to schedule meetings. Nov. RR 21. Lundblad further testified that when Reneau is sent out into the field, he does his own thing and works within the confines in which Endura is "expecting him to be practicing business…with full principles and integrity". Nov. RR 22.

Endura also argued in the trial court that in transactions in which Reneau is

the point of contact, he is listed on listing agreements as "Key Agents: Josh Reneau." Nov. RR 15; Endura Brief at 15. This is absolutely true. However, simply because Reneau is identified as a "Key Agent" on listing agreements does not mean that he is operating as an agent in the legal sense. *See McCluskey* 2004 LEXIS at 11. In fact, it makes sense that he would be identified as an agent on a listing agreement because he is a licensed Texas real estate agent. *See* Endura Brief at Exhibit 5, pg. 1. Moreover, nowhere in the Listing Agreement cited by Endura ("the Listing Agreement"), does it state that Endura has a right to control the actions of Reneau. *See* Endura Brief at Exhibit 5. Under the "Duties and Authority of Broker" section of the Listing Agreement, it states, "[i]f there are any Key Agents designated in Paragraph 1.8, then Broker shall assign those Key Agents to be primarily responsible for performing the duties of Broker hereunder during the entire term hereof." Endura Brief at Exhibit 5. The Listing Agreement then goes on to state the general duties of the Broker and states that the Broker, ***"confirms and agrees that it is acting as an independent contractor and not as Owner's agent."*** Endura Brief at Exhibit 5. (emphasis added). Nothing in this Listing Agreement gives any person the right to control the means and methods of the work performed by Reneau. *See* Endura Brief at Exhibit 5.

Endura further argues that Reneau's Associate Compensation Agreement (the "Compensation Agreement") with Endura lists him as an "Associate," not an

independent contractor. Endura Brief at 15. While this is technically true, the Compensation Agreement does not identify Reneau as an agent or a representative. *See* Endura Brief at Exhibit 6. Nor does it give Endura any right to control the means and details of the process by which Reneau will accomplish his purpose as a licensed real estate agent. *See* Endura Brief at Exhibit 6. The Compensation Agreement simply lists certain situations in which Reneau can earn commissions, referral fees, override percentage fees, investment opportunities, and various benefits from Endura in order to promote Reneau's individual business. *See* Endura Brief at Exhibit 6.

Even more telling of Reneau's status as an independent contractor is Article III in the Compensation Agreement, entitled "Client Expansions." *See* Endura Brief at Exhibit 6. In this section, the Compensation Agreement states, "In the event a client expands its portfolio with Endura and if Associate secured such client and remains 'actively involved', then an additional referral fee shall be due Associate. *See* Endura Brief at Exhibit 6. To be eligible for such additional referral fee, active involvement of Associate must meet the following criteria...(b) an ability to demonstrate a ***high degree of access/control over the potential account*** through a legitimate relationship with the client" (emphasis added). *See* Endura Brief at Exhibit 6. Not only does the Compensation Agreement not even remotely hint that Endura maintains control over the way Reneau accomplishes his purpose, but it

actually offers an extra referral fee to Reneau if he is able to exercise his own independent control over the accounts that he brings to Endura. *See* Endura Brief at Exhibit 6. Endura conveniently ignores these provisions in its Appellate Brief.

Furthermore, in Article VII of the Compensation Agreement entitled, "Expenses paid by Endura," Endura offers to pay Reneau's business expenses and fringe benefits in order to, "assist and promote [his] business." *See* Endura Brief at Exhibit 6. In this section of the Compensation Agreement, Endura expressly recognizes that the Associate listed in the agreement has his own individual business. *See* Endura Brief at Exhibit 6. While Reneau can choose to enter into listing agreements with Endura, he is freely representing his own business without any control on Endura's part. *See* Endura Brief at Exhibit 6.

Additionally, another fact that is significant in demonstrating Reneau's status as an independent contractor is that Endura Advisory Group does not pay any employment taxes for Reneau. Nov. RR 22. In fact, in Article II of the Compensation Agreement, entitled "Referral Commissions," it states, "[t]o be eligible to participate in the override fee structure, Associate must meet the following criteria: (1) must <u>not</u> be a salaried employee." Nov. RR 23. Further, Lundblad admitted that Reneau is not an employee of Endura. Nov. RR 23-24. Lundblad also testified that Endura's partnership, the entity with whom Reneau executed his Compensation Agreement, does not even hold Reneau's license; the

general partner, Endura Advisory Group, GP, LLC holds Reneau's license. Nov. RR 24; 26.

Endura further argues in the alternative that if Reneau is not in fact an agent of Endura he is a representative of Endura. Oct. RR 8; Nov. RR 43-44. However, Endura has offered no factually or legally sufficient evidence that Reneau is a representative of Endura. *See* Endura Brief at 13-17. The only evidence that Endura has offered is Lundblad's testimony that Reneau was Endura's representative, the fact that Reneau represents himself to the public as working for Endura, and that Lundblad believes that Reneau's role in his involvement in listing agreements with Endura is to act as Endura's representative. Endura Brief at 14-15. Furthermore, Endura states that "in the eyes of Endura and its principles," Reneau is a representative. Endura Brief at 16. Endura also argues that Reneau's title as an associate vice president for two years demonstrates that he is a representative of Endura. Oct. RR 8.

Reneau's status as a representative cannot be created simply because Endura or its principles believe that Reneau is a representative of Endura or because he has a card that says he is an associate vice president. Nov. RR 41. On the other hand, as demonstrated above, Reneau has sole control over the means and methods of the work he has to accomplish and he is an independent contractor. *See Bell* 205 S.W.3d at 713. Simply put, Endura's arguments cannot overcome the dispositive fact that

Reneau is an independent contractor pursuant to his agreement with Endura as further confirmed by the testimony of Endura's own witness.

The trial court did not err in denying Endura's Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process or in denying Endura's Motion for Reconsideration of its Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process because Endura has not met its burden of showing that Reneau is an agent, a representative, or that he falls under any other category that would allow the dispute in the trial court to fall under the scope of the Separation Agreement and thus the arbitration clause.

### B.     Endura's Intent as to the Separation Agreement is Irrelevant.

Endura argues that the intent of the Separation Agreement was to include Reneau and, for that matter, everyone that works with Endura. Endura Brief at 17. Endura claims that the Separation Agreement was intended to be broad enough to release Endura and all those who could arguably come under the Endura umbrella from any claims by Altomare during his tenure with Endura. Nov. RR 11. Endura states that this intent is the reason for the inclusion of the language in paragraph five (5) of the Separation Agreement that covers the "Partnership, its related entities, officers, members, partners, limited partners, employees, directors, managers,

agents, trustees, administrators, representatives, subsidiaries, affiliates, successors, and assigns." Nov. RR 11. In reference to the entities included in paragraph five (5) of the Separation Agreement, Endura states, "you name it, it was in there." Oct. RR 11-12. Additionally, when Lundblad testified at the November 7, 2014 hearing on Endura's Motion for Reconsideration, he stated that it was Endura's intention to have a clean separation from Altomare by way of the Separation Agreement and that this was the reason Endura paid Altomare more than he would normally be entitled to in his disassociation with Endura. Nov. RR 17. He also testified that the Separation Agreement was intended to encompass everyone at Endura at the time of Altomare's departure, which included Reneau. Nov. RR 17.

Regardless, the intent of Endura or any partner of Endura is immaterial and prohibited by the parol-evidence rule. In the interpretation of a contract, the primary concern of the court is to ascertain and give effect to the intentions of the parties as they are expressed in the instrument. *R&P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980). In order to achieve this object, the court is to consider the entire instrument so that no provision is rendered meaningless. *Id.* at 519. If a written instrument is worded so that a court can properly give it a certain or definite legal meaning or interpretation, it is not ambiguous. *Id.* The parol-evidence rule prohibits consideration of extrinsic evidence to contradict, vary, or add to the terms of an unambiguous written agreement unless there has been fraud,

accident, or mistake. *In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 369 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding). Under the parol-evidence rule, when there is no evidence of fraud or mistake, and the agreement is complete and unambiguous, extrinsic evidence is inadmissible to vary, add to, or contradict the terms of the agreement. *Jackson v. Hernandez*, 285 S.W.2d 184, 190 (Tex. 1955). Extrinsic evidence is admissible to discover the true meaning of a written instrument only if it is found to be ambiguous. *R&P Enters.*, 596 S.W.2d at 518-19.

Endura has not claimed or argued that the Separation Agreement is ambiguous. *See* Endura Brief at 17-19. As such, it must be interpreted according to its express terms. *See In re H.E. Butt Grocery Co.*, 17 S.W.3d at 369. The Separation Agreement clearly lists the specific entities that are covered within the release in paragraph five (5). Endura Brief at Exhibit 1. Therefore, the parol-evidence rule prohibits Endura from offering extrinsic evidence of the intent of the parties when they entered into the Separation Agreement, thereby varying or adding to the terms of the agreement. *Jackson*, 285 S.W.2d at 190.

**C. The Separation Agreement Does Not Relate to the Present Dispute.**

In the trial court, Altomare brought a cause of action against Reneau for breach of the Contractual Agreement. CR 2. Endura claims that as part of the Separation Agreement, Altomare released any claim that he had or could later acquire against Endura with the exception of brokers' commissions defined and

qualified in the Separation Agreement. CR 10. Paragraph five (5) of the Separation Agreement states, "you hereby release any claim of any kind that relates to or involves your relationship or the separation of your relationship with the Partnership that you may have or acquire against the Partnership...[t]he claims you are agreeing to release include, but are not limited to, all claims, charges, complaints, liabilities, obligations, promises, agreements, contracts, damages, actions, causes of action, suits, accrued benefits or other liabilities of any kind or character, whether known or hereafter discovered, ***arising from or in any way connected with or related to your tenure with the Partnership and your resignation from the Partnership***" (emphasis added). Endura Brief at Exhibit 1. The Contractual Agreement at issue in the trial court was executed separate and apart from Endura and Endura is neither a party nor a third party beneficiary of the Contractual Agreement. CR 29. Altomare's Separation Agreement has no relation to the Contractual Agreement whatsoever. CR 29.

## CONCLUSION AND PRAYER

The trial court did not err in denying Endura's Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process or in denying Endura's Motion for Reconsideration of its Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute

Resolution Process because: (1) Endura has not met its burden of showing that Reneau is an agent or that he falls under any other category that would allow the dispute in the trial court to fall under the scope of the Separation Agreement and thus the arbitration clause; and (2) the Separation Agreement does not relate to the dispute pending in trial court. Therefore, the Order Denying Endura Advisory Group, Ltd.'s Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process should stand as well as the Order Denying Intervenor, Endura Advisory Group, Ltd.'s Motion for Reconsideration of Denial of its Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process.

WHEREFORE, Altomare prays that the Court:

(1)     Affirm the trial court's Order Denying Endura Advisory Group, Ltd.'s Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process;

(2)     Affirm the trial court's Order Denying Intervenor, Endura Advisory Group, Ltd.'s Motion for Reconsideration of Denial of its Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process; and

(3) Award Altomare such other and further relief, both general and special, at law or in equity, to which he may be justly entitled.

Respectfully submitted,

**PULMAN, CAPPUCCIO, PULLEN BENSON & JONES, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: __/s/ *Eric A. Pullen*_____
  Eric A. Pullen
  Texas State Bar No. 24007881
  epullen@pulmanlaw.com
  Sarah A. Reyes
  Texas State Bar No. 24088292
  sreyes@pulmanlaw.com

**ATTORNEYS FOR APPELLEE DOMINIC ALTOMARE**

# CERTIFICATE OF COMPLIANCE

Pursuant to TEX. R. APP. P. 9.4(i)((3), I hereby certify that, excluding those parts allowed to be excluded, the above and foregoing Brief of Appellee, Dominic Altomare contains 5436 words.



| Word Count | | |
|---|---|---|
| Statistics: | | |
| Pages | | 24 |
| Words | | 5,436 |
| Characters (no spaces) | | 28,469 |
| Characters (with spaces) | | 34,087 |
| Paragraphs | | 54 |
| Lines | | 483 |

☑ Include textboxes, footnotes and endnotes

[ Close ]

/s/ *Eric A. Pullen*
Eric A. Pullen

## CERTIFICATE OF SERVICE

I certify that on the 16th day of February 2015, the foregoing Brief of Appellee,

Dominic Altomare has been transmitted by United States Postal Service Certified

Mail, with return receipt requested therefor, in accordance with the requirements of

the Texas Rules of Appellate Procedure, addressed as follows:

Gay Gueringer
Doug K. Clemons
Richie & Gueringer, P.C.
112 East Pecan Street, Suite 1420
San Antonio, Texas 78205
**Attorneys for Appellant**
**Endura Advisory Group, Ltd.**

_/s/ Eric A. Pullen_
Eric A. Pullen