**Opinion filed June 30, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00167-CV

_____

## RUSSELL SCOTT JONES AND WESTEX NOTREES, LP,
### Appellants/Cross-Appellees

## V.

## R.O. POMROY EQUIPMENT RENTAL, INC.
## D/B/A ROPER, INC., Appellee/Cross-Appellant

**On Appeal from the County Court at Law**
**Ector County, Texas**
**Trial Court Cause No. CC-22,135**

## O P I N I O N

Russell Scott Jones and Westex Notrees, LP appeal the judgment of the trial court that awarded $9,994.53 plus prejudgment interest and 5% postjudgment interest as well as attorney's fees of $10,000 to R.O. Pomroy Equipment Rental, Inc. d/b/a Roper, Inc. (Roper) based upon their breach of rental agreements with Roper.

Jones and Westex present five issues on appeal, while Roper presents one issue in its cross-appeal. Jones and Westex challenge the trial court's ruling that the two equipment rental agreements[1] were ambiguous and that Daniel Florez was authorized to sign one of the equipment rental agreements on behalf of Westex. They also challenge the trial court's ruling that there was one large rental agreement, that Roper never demanded 18% interest per annum on unpaid invoices, and that Jones and Westex failed to prove their usury claim. Roper cross-appealed and complains that the trial court's award of prejudgment interest of $364.73 and the award of 5% postjudgment interest should have been 18% interest for both prejudgment and postjudgment interest. We modify and affirm, but remand for the calculation of prejudgment interest.

## I. *Evidence at Trial*

Jennifer Pomroy was an employee of, and secretary for, Roper in April 2010. Roper, an equipment rental business, rented an air compressor and one loader to Westex. Pomroy testified that Westex's representatives, Russell Scott Jones and Daniel Florez, signed two equipment rental agreements (the Agreements). Jones is the general partner and owner of Westex, while Florez is an equipment operator for Westex.

Jones testified that his employees could sign equipment receipts or delivery tickets at the jobsite. Jones testified that Florez was authorized to sign documents for equipment delivery at the jobsite, just as Jones himself had done, but that company employees could not sign equipment rental contracts on Westex's behalf. Jones testified that Westex rented an air compressor from Roper. Jones also acknowledged that Westex had rented a loader and had Roper pick up an excavator for repair.

---

[1]The parties refer to the agreements as equipment receipts or delivery tickets.

2

Pomroy testified that Roper's Exhibits One and Four were copies of the Agreements; Jones signed Exhibit One, the air compressor rental, while Florez signed Exhibit Four, the loader rental. Pomroy identified Roper's Exhibits Two and Three as invoices for the rental of the air compressor. Roper's Exhibits Five and Six were invoices for the loader delivery and pickup, while Exhibit Seven was a rental invoice for the loader for the second month. Plaintiff's Exhibit Eight was a credit memo. Pomroy also said that Roper picked up an excavator, on behalf of Westex, and brought it back for repair.

Pomroy testified that a customer does not have to pay in advance to rent equipment but that invoices are sent requesting payment, as was done with Westex. Pomroy said the Agreements allowed for interest to be charged on unpaid accounts, and Roper's Exhibits One and Four provided that all past-due balances were subject to the maximum amount of interest allowed by law.

Jones complained that, in Invoice 20554, Roper had tried to charge him for an excavator that had been picked up on behalf of another customer. Jones also argued that he had never agreed to pay 18% interest per annum on his unpaid accounts. Pomroy admitted that Invoice 20554 was for another customer, and prior to trial, she credited the entire amount of that invoice to Westex's account. She also indicated that Invoice 20554 provided that finance charges of "one and a half percent" would be applied to unpaid accounts, but Invoice 20554 was not Westex's invoice.

Pomroy testified that Roper's Exhibit Nine reflected that Westex owed Roper $9,994.53 in unpaid rental invoices and that Roper sought payment for $9,994.53. Jones said that he had paid $15,000 to Roper, but he admitted that he owed $9,994.53 to Roper for unpaid invoices. Westex also admitted, in a written admission response, that payment for $9,994.53 was more than thirty days overdue prior to the date of the suit. Although Jones did not contest that he owed

3

$9,994.53, he claimed that he never agreed to 18% interest being charged for unpaid balances.

Jones claimed that the interest demanded was $7,879.37, but he thought he only owed $2,415.43. Jones said he thought he was being overcharged $5,463.94 for interest. Jones admitted the totals on his Exhibit 11 were incorrect because of the credits and other changes that were made to the invoices. Jones also admitted that the demand letter only made a demand for principal amounts due and owing to Roper by Westex.

In the final judgment, signed on March 26, 2012, the trial court entered judgment awarding Roper $9,994.53 as damages from Jones and Westex, jointly and severally. The trial court also awarded prejudgment interest of $364.73; 5% postjudgment interest from the date of the judgment; $10,000 in attorney's fees; and taxable costs of court, including costs incurred in satisfying the judgment.

## II. *Findings of Fact and Conclusions of Law*

On April 18, 2012, Westex prepared proposed findings of fact and conclusions of law, which the trial court signed on May 1, 2012. Later, Roper filed a request for amended and additional findings of fact and conclusions of law, to which Westex objected. The trial court entered amended findings of fact and conclusions of law on June 22, 2012, in which the trial court kept some of the May 1, 2012 findings of fact but deleted others. The trial court's amended findings of fact also added thirty-eight findings of fact. The trial court entered one conclusion of law on May 1, 2012, and entered additional conclusions of law on June 22, 2012.

## III. *Issues Presented*

Jones and Westex present five issues on appeal. First, the trial court erred in finding that the Agreements were ambiguous. Second, the trial court erred in finding that Florez was authorized to sign an Agreement on behalf of Westex.

4

Third, the trial court erred in finding that Roper never charged or demanded an 18% per annum charge on Westex's account. Fourth, the trial court erred when it held that the parties' agreement for an air compressor and loader rentals was one large rental agreement. Fifth, the trial court erred when it denied Westex's usury claim. In its cross-appeal, Roper presents one issue challenging the prejudgment and postjudgment interest rates and urging that both should have been 18%.

IV. *Standard of Review*

On appeal, a trial court's findings of fact have the same force and effect as a jury's verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). As the factfinder, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Nat'l Freight, Inc. v.. Snyder*, 191 S.W.3d 416, 422 (Tex. App.—Eastland 2006, no pet.). A trial court's findings of fact are reviewable for legal and factual sufficiency. *Anderson*, 806 S.W.2d at 794. Sufficiency challenges to a trial court's findings of fact are reviewed under the same standards used to review a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Kennon v. McGraw*, 281 S.W.3d 648, 650 (Tex. App.—Eastland 2009, no pet.) (citing *Girdner v. Rose*, 213 S.W.3d 438, 445 (Tex. App.—Eastland 2006, no pet.)).

To analyze a legal sufficiency challenge, we must determine whether the evidence would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We review the evidence in the light most favorable to the challenged finding. *Id.* at 821–22. We give credit to favorable evidence if a reasonable factfinder could do so, and we disregard contrary evidence unless a reasonable factfinder could not do so. *Id.* at 827.

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of a vital fact, (2) the court is barred by rules of law

5

or evidence from giving weight to the only evidence offered to prove a vital fact, (3) evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810 (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960)).

To analyze a factual sufficiency challenge, we must consider and weigh all the evidence and may set aside a verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). We review a trial court's conclusions of law, including those mislabeled as findings of fact, de novo. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

## V. *Analysis*

### A. *Authority*

We first address Jones and Westex's second issue that the trial court erred in finding that Florez was authorized to enter into an Agreement for Westex. An agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority). *Protocol Techs., Inc. v. J.B. Grand Canyon Dairy, L.P.*, 406 S.W.3d 609, 616 (Tex. App.—Eastland 2013, no pet.) (citing *Gaines v. Kelly*, 235 S.W.3d 179, 183 (Tex. 2007)). There is no presumption of an agency relationship; rather, the party asserting agency has the burden of proving the relationship. *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007). "An agent cannot bind a principal absent either actual or apparent authority." *Sanders v. Total Heat & Air, Inc.*, 248 S.W.3d 907, 913 (Tex. App.—Dallas 2008, no pet.).

6

Actual authority includes both express and implied authority and generally represents the authority a principal intentionally confers upon an agent; intentionally allows the agent to believe he possesses; or by want of due care, allows the agent to believe he possesses. *R & R Marine, Inc. v. Max Access, Inc.*, 377 S.W.3d 780, 787 (Tex. App.—Beaumont 2012, no pet.) (citing *2616 S. Loop L.L.C. v. Health Source Home Care, Inc.*, 201 S.W.3d 349, 356 (Tex. App.—Houston [14th Dist.] 2006, no pet.)). Actual authority is based on the principal's written or spoken words or conduct that is communicated to the purported agent. *R & R Marine*, 377 S.W.3d at 787 (citing *Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 549–50 (Tex. App.—Houston [14th Dist.] 2003, no pet.)).

Jones had accounts with Roper. Jones testified that Westex was not buying the air compressor, but had rented it from Roper; he also agreed that he signed the Agreement for the compressor rental. Jones also said that he did not have a problem with his employees signing equipment receipts or delivery tickets for him at the jobsite. Jones admitted that he had signed Roper's Exhibit One and would not have a problem with Florez signing a document that Jones would sign, like Roper's Exhibit One, which Jones signed, and Roper's Exhibit Four, which Florez signed. Consequently, Jones had conferred on Florez actual authority to sign an equipment receipt for delivery of equipment to a jobsite, which commenced a rental of the delivered equipment under the terms outlined in the Agreement. The trial court did not err when it found that Florez was an agent authorized by Jones and Westex to sign the Agreement that acknowledged delivery of the loader to Westex's jobsite. We overrule Jones and Westex's second issue.

*B. Ambiguity*

We next turn to Jones and Westex's first and fourth issues that the trial court erred in finding that the Agreements were ambiguous because the documents failed to specify the numerical interest rate Roper would charge and when that charge

7

would commence on past-due accounts and in finding that the Agreements were one large agreement. Roper argues that the proper interest rate for collections on past-due accounts was 18% interest, but Jones and Westex argue they never agreed to that term.

The primary concern of a court in construing a contract is to ascertain and give effect to the parties' intentions as expressed in the writing itself. *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 805 (Tex. 2012); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). We begin by analyzing the contract's express language. *El Paso Field Servs.*, 389 S.W.3d at 805–06. To discern the parties' intent, we must examine and consider the entire writing in an effort to harmonize and give effect to all of the provisions of the contract so that none of the provisions will be rendered meaningless. *Id.* at 805. We are to look at the contract as a whole in light of the circumstances present when the contract was entered. *Nat'l Union Fire Ins.*, 907 S.W.2d at 520. No one phrase, sentence, or section of a contract should be isolated from its setting and considered apart from the other provisions. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994).

A contract is ambiguous when its meaning is uncertain and doubtful or when it is reasonably susceptible to more than one meaning. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998); *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996); *Coker v. Coker*, 650 S.W.2d 391, 393–94 (Tex. 1983). Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in the light of the circumstances present when the contract was entered. *Nat'l Union Fire Ins.*, 907 S.W.2d at 520. Only when a contract is determined to be ambiguous may a court consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument. *Id.* When the meaning of the contract is plain and

8

unambiguous, a party's construction is immaterial. *Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726, 732 (Tex. 1981).

Jones and Westex argue that there are four sets of documents in dispute, but the record reflected only two sets: the Agreements and invoices. The invoices were generated from information contained in the Agreements. The Agreements reflected shipments of rental equipment—an air compressor[2] and a loader[3]—to a specific jobsite, the applicable rental rate, the start date, the terms of the Agreement on the front and back of the document, and a signature of acceptance by Westex's representative. Once Westex's representative received the equipment and signed for the delivery, the rental period began in accordance with the terms in the Agreement. The documents together, taken as a whole, were one single rental agreement as to the interest to be charged on the account because Exhibit One reflected that interest would be collected and that it would accrue at the maximum amount allowed by law.

As to Jones and Westex's complaint about the interest rate to be charged, the parties did not contract for interest on a loan or credit sale or for a lease-purchase, all of which are regulated by our usury statutes. *See* TEX. FIN. CODE ANN. tit. 4 (West 2006 & Supp. 2013); *see also Potomac Leasing Co. v. Hous. Auth. of City of El Paso*, 743 S.W.2d 712, 713 (Tex. App.—El Paso 1987, writ denied) (citing *Transamerican Leasing Co. v. Three Bears, Inc.*, 586 S.W.2d 472 (Tex. 1979)); *Apparel Mfg. Co. v. Vantage Props., Inc.*, 597 S.W.2d 447, 448 (Tex. Civ. App.— Dallas 1980, writ ref'd n.r.e.). The parties, instead, contracted for the rental of a compressor and a loader. Under Texas law, prejudgment interest is an additional damage award for the loss of use of money between the time of the accrual of the

---

[2]Roper's Exhibit One covered the rental of the air compressor.

[3]Roper's Exhibit Four covered the rental of the loader.

9

claim and the date of the judgment. *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998). Two separate bases exist in Texas for prejudgment interest: (1) an enabling statute and (2) general principles of equity. *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480, 485 (Tex. 1978). The former applies to judgments for credit transactions, wrongful death, personal injury, property damage, and condemnation cases, while the latter applies, under common law, to a breach-of-contract claim. FIN. §§ 302.002, 304.102, 304.201; *Kenneco*, 962 S.W.2d at 530; *Adams v. H & H Meat Prods., Inc.*, 41 S.W.3d 762, 780 (Tex. App.—Corpus Christi 2001, no pet.).

Where a contract for the rental of equipment, which is not a credit transaction, specifies that interest will be collected on unpaid rental charges, the interest rate can be determined by the judgment rate statutes. FIN. §§ 304.002, 304.003. If the contract specifies that interest will be charged at the maximum rate allowed by law, then a numerical rate is not needed and the rate can be determined by the judgment interest statutes. FIN. §§ 304.002, 304.003. In addition, Texas common law and the judgment rate statutes allow prejudgment interest to accrue at the same rate as postjudgment interest on damages awarded for breach of contract. FIN. § 304.002; *Kenneco*, 962 S.W.2d at 532; *Whitehead Utils., Inc. v. Emery Fin. Corp.*, 697 S.W.2d 460, 461 (Tex. App.—Beaumont 1985, no writ); *see also ExxonMobil Corp. v. Valence Operating Co.*, 174 S.W.3d 303, 319 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

Jones signed an Agreement that stated: "All past due balances subject to the maximum amount of interest allowed by law." Jones signed an Agreement and, in so doing, agreed that interest would be collected on unpaid balances. The Agreement also provided that the rate of interest would be the maximum allowed by law, which is determined by the respective judgment rate statutes. FIN. §§ 304.002, 304.003. Jones admitted that Westex had paid some of the rental

10

charges but had not paid the entire amount owed. Jones admitted that he owed $9,994.53 and that the amount was more than thirty days past due. The applicable postjudgment rate is 18% interest, as set out in the judgment rate statute for contracts that provide for interest. *See* FIN. § 304.002. The prejudgment interest rate is the same as the postjudgment rate of 18% simple interest. *See* FIN. § 304.002; *Emery*, 697 S.W.2d at 461. We overrule Jones and Westex's first and fourth issues and sustain Roper's cross-issue.

### C. Jones and Westex's Usury Claim

Jones and Westex assert, in their third and fifth issues, that the trial court erred when it rejected their usury claim because Roper charged or demanded an 18% per annum charge on Westex's account. The Texas Supreme Court has outlined what type of transaction is subject to the usury statutes. In *Holley v. Watts*, the court stated:

> The essential elements of a usurious transaction are: (1) a loan of money; (2) an absolute obligation that the principal be repaid; and (3) the exaction of a greater compensation than allowed by law for the use of the money by the borrower.

629 S.W.2d 694, 696 (Tex. 1982). Before the usury statutes can be applied to leases, it is necessary to first establish that the leases were not mere leases but were, instead, lease-purchase agreements. *Potomac Leasing*, 743 S.W.2d at 713 (citing *Three Bears*, 586 S.W.2d 472).

In this case, there is no claim of a lease-purchase agreement. Pomroy testified that both of the Agreements were rental or lease transactions. Jones agreed that the transactions were strictly rentals and that Westex was not buying any equipment. The trial court found that Roper's Exhibits One and Four were rental or lease transactions for Westex to rent an air compressor and a loader from Roper. We have previously held that there can be no usury in a lease transaction.

11

*Maloney v. Andrews*, 483 S.W.2d 703, 704 (Tex. Civ. App.—Eastland 1972, writ ref'd n.r.e.); *see also Potomac Leasing*, 743 S.W.2d at 713; *Brokers Leasing Corp. v. Standard Pipeline Coating Co.*, 602 S.W.2d 278 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.); *Apparel Mfg.*, 597 S.W.2d at 449; *Sw. Park Outpatient Surgery, Ltd. v. Chandler Leasing Div.*, 572 S.W.2d 53, 55 (Tex. Civ. App.—Houston [1st Dist.] 1978, no writ).

The two sets of documents at issue were the Agreements and their accompanying invoices, which, as we have explained earlier, did not specify a numerical interest rate but did state that Roper would collect interest on unpaid balances and that the interest would accrue at the maximum rate allowed by law. Jones signed the first Agreement.

We hold that the trial court did not err when it ruled that the Agreements did not charge usurious interest because the usury laws do not apply to rental transactions. *See Apparel Mfg.*, 597 S.W.2d at 449; *Maloney*, 483 S.W.2d at 704. We also hold that Roper never charged usurious interest because a contract that specifies that interest will be collected on unpaid balances from a rental agreement and that the interest will accrue at the maximum rate allowed by law is not, as a matter of law, usurious. *Apparel Mfg.*, 597 S.W.2d at 449 (citing *Maloney*, 483 S.W.2d at 704). We further hold that Roper is entitled to postjudgment interest, as provided in the Agreements, and that the applicable rate is 18% simple interest. Likewise, because the prejudgment rate is the same as the postjudgment rate, the prejudgment rate is 18% simple interest. We overrule Jones and Westex's third and fifth issues.

## VI. *This Court's Ruling*

We agree with Roper that there is no ambiguity in the Agreements and we overrule Jones and Westex's first issue. We overrule their second issue on the agency of Florez and their third issue on interest. As to their fourth issue, we hold

12

that the trial court's ruling that there were two Agreements that encompassed one larger rental Agreement was not erroneous.  As to their final issue, we hold that the trial court correctly determined that the usury statutes do not apply and that Roper did not charge usurious interest.  Jones and Westex's final issue is overruled.

We sustain Roper's issue on cross-appeal that the trial court (1) erred in its award of $364.73 in prejudgment interest and (2) erred in its award of 5% interest for postjudgment interest.

We modify the judgment of the trial court to reflect that Roper is entitled to recover prejudgment interest at the rate of 18% simple interest on the unpaid balance of $9,994.53 and that Roper is entitled to collect postjudgment interest at the rate of 18% from the date of the trial court's judgment until the judgment is paid in full.  As modified, the judgment of the trial court is affirmed.  We remand the cause to the trial court for the calculation of the amount of prejudgment interest and for rendition of judgment in accordance with this opinion.


MIKE WILLSON
JUSTICE


June 30, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

13