**Opinion filed August 31, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00249-CV

_____

## ALLIED NORTH AMERICA INSURANCE BROKERAGE OF TEXAS, L.L.C., Appellant

## V.

## DIAMOND PUMP & TRANSPORT, LLC AND THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, Appellees

**On Appeal from the 70th District Court**
**Ector County, Texas**
**Trial Court Cause No. A-126,966-A**

## M E M O R A N D U M   O P I N I O N

James Garrett died as the result of injuries that he received when Aaron Sanchez, a driver for Diamond Pump & Transport, LLC, ran into the motorcycle that Garrett was riding. The truck that Sanchez was driving at the time belonged to Diamond and was insured by the Insurance Company of the State of Pennsylvania. However, ICSOP had named Sanchez as a driver who was excluded from coverage under the policy. Allied North America Insurance Brokerage of Texas, L.L.C. was

Diamond's insurance agent that placed the policy with ICSOP. This appeal concerns the validity of the named driver exclusion.

This lawsuit began when the representative of Garrett's estate, joined by Garrett's heirs, filed a wrongful death suit against Diamond. Because ICSOP had issued Diamond's vehicle insurance policy, and after it had issued a reservation of rights notice, ICSOP provided Diamond with a defense in connection with the Garrett lawsuit. Later, the Garrett plaintiffs amended their petition and added Sanchez as a defendant. Because it had listed Sanchez as an excluded driver in the policy, ICSOP then withdrew its defense and denied liability.

When ICSOP withdrew its defense and denied coverage, Diamond provided its own defense. Ultimately, Diamond paid $625,000 in damages to settle the wrongful death lawsuit. In addition to the amount of the settlement, in the process of providing its own defense in the Garrett claim, Diamond incurred attorney's fees of $22,524.63 and $50,824.88 in interest expense that had accrued on money it had to borrow in order to pay the Garrett claim.

After Diamond settled the Garrett lawsuit, the trial court ultimately had before it, by way of various pleadings, claims by Diamond against ICSOP and against Allied, claims by Allied against ICSOP, assorted declaratory judgment claims, as well as sundry defenses that Allied asserted as defenses to the various claims against it.

Trial was to the court. At the conclusion of the trial, the trial court concluded that Diamond could not recover on its claim against ICSOP because ICSOP had specifically and effectively excluded Sanchez as a covered driver under the policy it had issued to Diamond. The trial court also concluded that Diamond was entitled to recover on its negligence claims against Allied, and that Allied was not entitled to its requested relief against ICSOP on the coverage issue. In accordance with the findings of fact and conclusions of law entered by the trial court, it entered a

2

take-nothing judgment in favor of ICSOP on all claims against it. The judgment also granted relief in favor of Diamond against Allied for $625,000—the amount that Diamond paid to settle the wrongful death lawsuit. In its judgment, the trial court also awarded Diamond $73,349.51, which includes $22,524.63 that Diamond had paid to an attorney to represent it in the Garrett lawsuit and $50,824.88 in interest expense that had accrued on money Diamond had to borrow to pay the Garrett claim. It also awarded Diamond prejudgment interest on the $73,349.51. The trial court denied all relief to Allied.

Diamond has not appealed from that part of the trial court's judgment wherein it held that the insurance policy did not provide coverage for the Garrett claim. However, Allied does complain that, for various reasons, it did not breach any duty that it owed to Diamond because, contrary to the trial court's findings and judgment, the ICSOP policy actually did provide coverage for the Garrett claim.

In a trial to the court, findings of fact have the same force and dignity as does the verdict of a jury upon questions submitted to it. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). When we review findings of fact for legal and factual sufficiency, we use the same standards as we apply when performing a review of those matters in connection with a jury verdict. *Id.*

In a legal sufficiency review, we consider only the evidence and inferences that tend to support the findings of the trial court and we disregard all evidence to the contrary. *Id.* If there is any evidence to support the finding, we will find that the evidence is legally sufficient. *Id.* We credit evidence that is favorable to the finding if a reasonable factfinder could, and we disregard evidence to the contrary unless a reasonable factfinder could not do so. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Lambright v. Trahan*, 322 S.W.3d 424, 430 (Tex. App.—Texarkana 2010, pet. denied).

In a factual sufficiency review, we will consider and weigh all the evidence and will set aside a verdict only when, depending upon which party had the burden of proof, the evidence is so weak, or the finding is so against the great weight and preponderance of the evidence, as to be clearly wrong and unjust. *Jones v. R.O. Pomroy Equip. Rental, Inc.*, 438 S.W.3d 125, 130 (Tex. App.—Eastland 2014, pet. denied).

We review challenges to a trial court's conclusions of law de novo. That standard applies also to those conclusions of law that are incorrectly labeled as findings of fact. *Id.*

ICSOP argues that Allied has not challenged either the legal or the factual sufficiency of the findings of the trial court. ICSOP claims that Allied has challenged only the trial court's conclusions of law. Although we tend to agree that Allied's challenges are directed at the trial court's conclusions of law rather than its findings of fact, we will proceed as though Allied had properly challenged the findings of fact. We do so because, in any event, the record supports the findings of fact, legally and factually, under the standards that we have outlined.

Beginning in 2005, Allied began to broker insurance for Diamond Tank Rental, Diamond's sister corporation. In 2007, Allied personnel obtained various types of insurance for Diamond, including commercial auto insurance. American Home Assurance, a sister company to ICSOP, issued the auto policy; the policy did not exclude any of Diamond's drivers. The 2007 policy expired on August 1, 2008.

Shortly before the August 1, 2008 expiration date, ICSOP requested information from Allied to be used to renew Diamond's policy for the upcoming year. ICSOP subsequently sent a quote in which it listed Sanchez as an excluded driver. Allied denied receiving this first quote, but it did receive a revised quote dated July 30, 2008. The cover page of this revised quote also listed Sanchez as an excluded driver.

4

Allied personnel used the July 30 quote from ICSOP to prepare a proposal that Allied submitted to Diamond. The testimony from Allied personnel shows that they failed to read, but should have read, that part of the quote from ICSOP in which it listed Sanchez as an excluded driver. Because they did not read that part of the quote, the proposal that Allied presented to Diamond did not show that Sanchez would be an excluded driver, and Allied did not inform Diamond that the policy would not cover Sanchez. To the contrary, in its proposal, Allied specifically listed Sanchez among the other Diamond employees that the ICSOP policy would cover. After some revisions not relevant to this appeal, Diamond accepted Allied's proposal. ICSOP issued a final bound quote that excluded Sanchez from coverage.

Subsequently, ICSOP ultimately issued the policy, and Allied personnel examined it, compared the policy with the final bound quote, found no differences between the two, and delivered the policy to Diamond. Allied personnel did not compare the policy with the proposal that it had prepared and that Diamond had accepted. No one from Diamond read the policy at the time that Allied delivered it, but unlike Allied's proposal, the policy contained an excluded driver endorsement whereby ICSOP excluded Sanchez from coverage. ICSOP based its decision to withdraw its defense and to deny coverage in relation to the Garrett claim upon this exclusion.

The "no coverage" conclusion is the subject of Allied's first issue on appeal. Specifically, Allied argues that, for a number of reasons, the trial court erred when it concluded that the ICSOP policy did not cover the Garrett wrongful death claim. ICSOP responds that Allied had no standing to question the existence of coverage because it was neither a party to nor a third-party beneficiary of the contract. Diamond sued Allied based upon Diamond's claim that Allied failed to procure the requested coverage and had not pointed that out to Diamond. Allied's defense was that it had in fact procured the required coverage because the excluded driver

5

endorsement was not effective to exclude Sanchez as a covered driver. If the trial court was wrong in its conclusion that there was no coverage, then all Diamond's claims against Allied would fail. For purposes of this appeal, we will assume that Allied had the right to present its defense and to appeal the trial court's contrary conclusion regarding Allied's defense that the policy did not exclude Sanchez as a covered driver.

Essentially, Allied bases its first issue on appeal on its claim that the excluded driver endorsement was ineffective because Diamond had not signed the endorsement and also because ICSOP had used the endorsement contrary to the manner of use that the Department of Insurance had approved.

At the beginning of the endorsement form, the excluded driver endorsement provided: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." The endorsement then contains the following language:

> You agree that none of the insurance coverages afforded by this policy shall apply while the excluded driver listed in the Schedule is operating a covered "auto" or any other motor vehicle.

> You further agree that this endorsement will also serve as a rejection of uninsured/underinsured motorists coverage and personal injury protection coverage while a covered "auto" or any other motor vehicle is operated by the excluded driver.

> Acknowledged   by _____
> (Your signature)

The endorsement was attached to the policy.

We believe that, by the unambiguous terms of the endorsement, Diamond was not required to agree to the terms of the policy. By the terms of the endorsement, ICSOP informed Diamond that Diamond was agreeing to the terms of the endorsement. The signature line is just what it said it was: an "acknowledgement" of the fact that Diamond was bound by the terms of the endorsement. Even if we

6

are incorrect in our assessment, and even if we were to agree with Allied's claims that the endorsement was unapproved, used contrary to what had been approved, or contrary to ICSOP's past practices, in such situations the endorsement is not void but, rather, contrary to Allied's assertions, voidable. Diamond accepted the benefits of the policy as written—with the endorsement attached—and it did so under the terms of the policy. *See Urrutia v. Decker*, 992 S.W.2d 440, 443 (Tex. 1999) (if an insured opts to accept the insurance, it accepts it under the terms of the policy). We have found neither case nor statute by the authority of which a named driver endorsement—as opposed to certain other types of endorsements, discussed below—must be signed by the insured in order to be effective. *See Callaway Dev. Corp. v. Steadfast Ins. Co.*, No. SA-06-CV-0361, 2007 WL 1032303 (W.D. Tex. April 3, 2007).

In its first issue, Allied also maintains that the endorsement effects a rejection of uninsured, underinsured, and personal injury protection and therefore must be signed in accordance with Sections 1952.104 and 1952.152 of the Texas Insurance Code. We simply note that there are no claims for uninsured, underinsured, or personal injury protection in this lawsuit. Even if those types of claims had been made, the lack of a written rejection of the coverage would result only in the unenforceability of the clause wherein those particular claims are excluded. *Stracener v. United Servs. Auto. Ass'n*, 777 S.W.2d 378, 384 (Tex. 1989).

Allied makes one further claim in its first issue on appeal: that the ICSOP policy did not comply with the following provision in the policy: "THIS ACKNOWLEDGEMENT AND REJECTION IS APPLICABLE TO ALL RENEWALS ISSUED BY US OR ANY AFFILIATED INSURER. HOWEVER, WE MUST PROVIDE A NOTICE WITH EACH RENEWAL AS FOLLOWS: 'THIS POLICY CONTAINS A NAMED DRIVER EXCLUSION.'" ICSOP correctly points out that this provision clearly and unambiguously pertains to any

7

future policies issued in renewal of the policy involved in this appeal. We construe an insurance policy as we would construe other contracts. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). When the language is plain, we construe the policy in accordance with that plain language. *Republic Nat'l Life Ins. Co. v. Spillars*, 368 S.W.2d 92, 94 (Tex. 1963). We hold that the notice requirement pertains only to a renewal of the policy under review in this case.

We have found no error in the trial court's judgment that the excluded driver endorsement effectively excluded Sanchez as a covered driver under the ICSOP policy. We overrule Allied's first issue on appeal.

In its second issue on appeal, Allied contends that the trial court erred, as a matter of law, in concluding that Diamond was not negligent in failing to review its policy. In subparts set forth under its second issue, Allied argues that Diamond could not have relied on Allied's written proposal because that proposal contained a disclaimer in which it exhorted Diamond to read the actual policy and to rely on it rather than the proposal. Allied also argues that it did not have a duty to explain the policy to Diamond.

First, we will address the second part of Allied's second issue. The testimony shows that Diamond's claim is not based solely upon a failure *to explain* the policy. It is clear from the record that, from prior experience, Diamond personnel knew what an excluded driver endorsement was and it did not need for Allied to explain that endorsement. Diamond further claims, however, that Allied did not *point out* the fact that the policy excluded Sanchez as a covered driver.

In Diamond's suit against Allied, there are two separate causes of action at work. The first involves a claim that Allied, as Diamond's insurance agent, had a duty to procure a certain type of vehicle coverage for Diamond and that, through its negligence, Allied failed to do so and that Diamond was injured as a proximate cause of Allied's failure. Negligent misrepresentation is a separate cause of action, and in

view of our ultimate decision in this appeal, we should not blur the distinction between the two in the resolution of Diamond's pure negligence claim against Allied. In the argument portion of Allied's second issue, it focuses on the reliance element of a negligent misrepresentation cause of action. However, even if that claim is not valid because of a lack of reliance, that is not the only claim that Diamond made against Allied. Because we affirm the trial court's judgment on grounds other than negligent misrepresentation, we need not discuss Diamond's negligent misrepresentation cause of action or Allied's argument in relation to it. Rather, we will confine ourselves to a consideration of Diamond's other negligence assertions.

The elements of a negligence cause of action are a duty, a breach of that duty, and damages proximately caused by the breach of that duty. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). Whether a legal duty exists is a question of law. *TXI Operations, L.P. v. Perry*, 278 S.W.3d 763, 765 (Tex. 2009). On the other hand, proximate cause is generally a question of fact but may be established as a matter of law if the circumstances are such that reasonable minds could not arrive at a different conclusion. *Boyd v. Fuel Distribs., Inc.*, 795 S.W.2d 266, 272 (Tex. App.—Austin 1990, writ denied) (citing *Mo. Pac. R.R. Co. v. Am. Statesman*, 552 S.W.2d 99, 104–05 (Tex. 1977)).

There are two elements of proximate cause: "cause in fact" and "foreseeability." *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004) (citing *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992)). "Cause in fact" means that the act or omission was a substantial factor in bringing about the injury, and without it harm would not have occurred. *Travis*, 830 S.W.2d at 98 (citing *Kerby v. Abilene Christian Coll.*, 503 S.W.2d 526, 528 (Tex. 1973)). "'Foreseeability' means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act

created for others." *Id.* (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549–50 (Tex. 1985); *Mo. Pac. R.R. Co.*, 552 S.W.2d at 103). More than one proximate cause to an injury may exist. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991). "All persons whose negligent conduct contributes to the injury, proximately causing the injury, are liable." *Travis*, 830 S.W.2d at 98.

Therefore, in this negligence cause of action—as opposed to a negligent misrepresentation one—we ask whether Allied owed any duty to Diamond, whether Allied breached any such duty to Diamond in the procurement of the ICSOP policy, and whether Diamond suffered damages that were proximately caused by that breach. *See Doe*, 907 S.W.2d at 477.

"[A]n insurance agent who undertakes to procure insurance for another owes a duty to a client to use reasonable diligence in attempting to place the requested insurance and to inform the client promptly if unable to do so." *May v. United Servs. Ass'n of Am.*, 844 S.W.2d 666, 669 (Tex. 1992) (footnote omitted). It follows then that "an insurance agent has a duty to his client not to advise the client that he is covered by insurance if he is, in fact, not so covered." *Powell v. Narried*, 463 S.W.2d 43, 45 (Tex. Civ. App.—El Paso 1971, writ ref'd n.r.e.).

Allied procured the first auto policy for Diamond in 2007 from American Home Assurance Company, a sister company of ICSOP. There were no excluded driver endorsements in that policy. When it came time to apply for a renewal of that policy in 2008—the renewal policy being the one involved in this lawsuit—Diamond furnished Allied with a list of drivers whom Diamond wanted to be covered. Sanchez was on that list. However, in all quotes that ICSOP sent to Allied, Sanchez was shown as an excluded driver. Allied personnel testified that not only did they fail to notify Diamond that the proposed ICSOP policy would not cover Sanchez and that Sanchez would be the subject of an excluded driver endorsement, but they also failed to even notice, although they admitted that they should have

10

noticed, that the quotes from ICSOP specifically listed Sanchez as an excluded driver. Further, not only did they testify that they should have read, Allied personnel in charge of obtaining coverage for Diamond also testified that they simply did not read the page of the quote from ICSOP that contained the excluded driver provision. Diamond personnel testified that, had Allied pointed out that Sanchez would be the subject of an excluded driver endorsement, Diamond would not have allowed Sanchez to drive a Diamond vehicle. Instead, as they had done for excluded drivers under previous policies that Allied had secured for Diamond's sister company, Diamond Tank Rental, they would have procured additional insurance.

The trial court concluded that "Allied owed Diamond the duty to use reasonable diligence in attempting to place the requested insurance, the duty to inform Diamond promptly if unable to do so, and the duty to use reasonable care in obtaining coverage to meet Diamond's needs." It also concluded that Allied breached that duty when it failed to notice the exclusion in the quotes from ICSOP, when it failed to compare the Diamond policy to the proposal from ICSOP, when it failed to inform Diamond that the policy was going to contain a named driver exclusion for Sanchez, and when it failed to inform Diamond that the policy actually contained the exclusion. The trial court also found that Allied's negligence was the proximate cause of Diamond's damages. The record supports the trial court's findings and conclusions.

Allied argues that Diamond owed it a duty to read the ICSOP policy, that Diamond personnel did not read the policy, that Diamond was negligent when it failed to do so, and that such negligence was the cause of Diamond's damages. However, as we have pointed out, in the argument portion of its brief on this issue, Allied explicitly directs its comments toward the reliance element of Diamond's "negligent misrepresentation" cause of action. As we have said, in light of our holding on the other negligence claims, we will not address the negligent

11

misrepresentation claims as they are not necessary to final disposition of this appeal. *See* TEX. R. APP. P. 47.1. We overrule Allied's second issue on appeal.

Finally, Allied's argument in its third issue on appeal is that the trial court erred when it disregarded "the admitted negligence of the Insurance Company in finding no duty owed to Allied or breach of that duty." However, in the argument portion of its briefing, Allied contends that ICSOP's duty to it arose because ICSOP "had a special relationship" with Allied and thus owed it a "duty of care." Allied asserts that the special relationship had its genesis in a series of past routines followed by ICSOP in its past dealings with Allied, which ICSOP did not follow in this transaction. However, a special relationship such as alleged by Allied does not exist between an insurance company and an agent or broker. *See Nat'l Am. Ins. Co. v. Thompson*, No. 06-00-00111-CV, 2001 WL 521913, at *6 (Tex. App.—Texarkana May 17, 2001, pet. denied) (citing *Casteel v. Crown Life Ins. Co.*, 3 S.W.3d 582, 590 (Tex. App.—Austin 1997), *aff'd in part & rev'd in part*, 22 S.W.3d 378 (Tex. 2000)). We overrule Allied's third issue on appeal.

We affirm the judgment of the trial court.


JIM R. WRIGHT
CHIEF JUSTICE


August 31, 2015

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.