**Opinion issued June 16, 2026**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-25-00756-CV

————————————

**MONTROSE 15, LLC D/B/A IDLE HANDS, ANDREW HUNTER, CRYSTAL HUNTER, AND MATTHEW WOLSKI, Appellants**

**V.**

**MONTROSE COLLECTIVE OWNER, LP, Appellee**

---

**On Appeal from the 190th District Court**
**Harris County, Texas**
**Trial Court Case No. 2023-75639**

---

## MEMORANDUM OPINION

The proceedings below in this landlord-tenant dispute ended in a bench trial.

Montrose 15 (the tenant) signed a retail lease agreement with Montrose Collective

Owner (the landlord) for 2,411 square feet of interior space with another 2,300

square feet of outdoor patio space. The lease has about 46 pages of single-spaced text, not counting attachments, with many detailed provisions. The lease provides for a 10-year primary term, running from 2021 to 2031, plus the possibility of extension terms.

In late 2023, the landlord filed suit alleging that Montrose 15 had fallen behind on the rent and breached the lease.[1] The suit proceeded to a bench trial on the landlord's allegations of breach of contract and its plea for money damages and attorney's fees.

The trial court found for the landlord and awarded damages. It awarded $264,146 in damages; prejudgment interest of $81,805; attorney's fees; and postjudgment interest at 18% per annum.

Montrose 15 filed a motion to modify the judgment. It assailed the use of 18% as the rate for prejudgment and postjudgment interest:

> In Texas, the rates for pre- and post-judgment interest are the same. *See* Tex. Fin. Code §304.103. Because the lease is silent on pre- and post-judgment interest, TEX. FIN. CODE §304.003 controls and the rate is the prime rate as published by the Board of Governors of the Federal Reserve System on the date of computation. *See* TEX. FIN. CODE §304.003(c)(1). On June 17, 2025, the Daily Prime Rate was 7.5%, not the 18% the Court awarded.

---

[1]    The suit named three individuals (Andrew Hunter, Crystal Hunter, and Matthew Wolski) as additional defendants on personal guaranty obligations, but we will treat the case as involving a single defendant for simplicity.

The motion concluded by requesting that the trial court modify the final judgment to impose a 7.5% prejudgment and postjudgment interest rate.

The motion to modify was overruled by operation of law. Montrose 15 appealed. It presents a single issue about the interest rate: "Did the trial court err in granting 18% pre and post judgment interest that were not contained in the underlying lease?"

### Judgment Interest Rate

The correct interpretation of an unambiguous contract is a question of law that we review de novo. *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763 (Tex. 2018); *see also Samson Expl., LLC v. Bordages*, 694 S.W.3d 195, 200 (Tex. 2024) (applying de novo review to late charge provision).

The lease contains 26 articles, starting with Articles I (Basic Lease Provisions and Defined Terms) and II (Demise of Leased Premises). It ends with Article XXVI (Miscellaneous), which chooses Texas law, provides fees to the prevailing party, and puts venue in Harris County for any litigation. The pivotal language appears in Article VII (Rent). Section 7.5 deals with late charges and refers to interest at a rate that must not exceed 1-1/2% per month:

> **7.5    Late Charges.** Should Tenant fail to pay to Landlord when due any payment of Rent or other charges provided hereunder, Tenant agrees to pay to Landlord, in addition to such Rent or other charges, an administrative charge of $500.00 to defray the additional costs and expenses that Landlord will incur in handling the late payment, plus

3

interest at the maximum contractual rate which may be legally charged in the event of a loan of such amount to Tenant (but in no event to exceed 1-1/2% per month), such interest to accrue continuously on any unpaid amount due to Landlord by Tenant during the period from the date due until the date paid. Any late charge or interest payment shall be payable as additional rent under this Lease, and shall be payable immediately on demand.

This section of the contract furnishes the clash point between the two sides.

Even so, it bears mention that other provisions of the lease use a similar scheme for interest by providing for the rate not to exceed 1-1/2% per month. For example, section 8.4 (Right to Examine Books) gives the landlord a right to audit Montrose 15's sales. If the audit reveals that Montrose 15 has understated those sales, Montrose 15 must pay the landlord "the deficiency in Percentage Rent plus interest at the maximum contractual rate which may be legally charged (but in no event to exceed 1-1/2% per month) . . . ." Section 9.2 (Tenant's Obligations) and Article XVII (Liens) use comparable language.

The parties agree that analysis starts with the Finance Code. Section 304.002 gives the rule for postjudgment interest in breach of contract cases where the contract provides for interest:

A money judgment of a court of this state on a contract that provides for interest or time price differential earns postjudgment interest at a rate equal to the lesser of:

(1)   the rate specified in the contract, which may be a variable rate; or

> (2)     18 percent a year.

TEX. FIN. CODE § 304.002. For contract cases where the contract does not so provide, courts fall back to the default rule from section 304.003(a), which relies on a floating rate that can change every month:

> (a)     A money judgment of a court of this state to which Section 304.002 does not apply, including court costs awarded in the judgment and prejudgment interest, if any, earns postjudgment interest at the rate determined under this section.

*Id.* § 304.003(a).

Guided by these statutory provisions, as well as by the decision in *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998) (op. on reh'g), the courts have tended to conclude that contracts calling for 1.5% interest per month on unpaid amounts result in an 18% rate of prejudgment and postjudgment interest. We start with the *Cook Composites* decision from our sister court, which laid out the text of the contract before deciding the rate:

> In its sixth issue, CCP argues the trial court erred in awarding prejudgment interest at eighteen percent. According to CCP, the provision in the Westlake/CCP contract on which the trial court purportedly relied in arriving at the prejudgment interest rate applies only to interest charged on overdue invoices and not to the calculation of prejudgment interest on a damage award. The parties' contract states:

>> INVOICE AND PAYMENT. Invoices for Products purchased by Buyer shall be rendered promptly following shipment. . . . Buyer shall pay interest on all past due amounts at the lower of (1) one and one-half percent (1 ½ %) per month or (2) the maximum non-usurious rate permitted by applicable law; provided, however, that

5

should Buyer dispute the accuracy of any portion of any invoice, Buyer may withhold payment of the disputed amount and shall promptly notify Seller specifying the amount in dispute and the reasons therefor. . . .

CCP argues that because Westlake stopped sending invoices to CCP when it stopped shipping product, "there was nothing to trigger the interest obligation" and the trial court erred in awarding prejudgment interest at the rate of eighteen percent. We reject this argument.

*Cook Composites, Inc. v. Westlake Styrene Corp.*, 15 S.W.3d 124, 141 (Tex. App.—Houston [14th Dist.] 2000, pet. dism'd) (footnote omitted). The court went on to say that this rate on past due "amounts" resulted in an 18% rate for prejudgment interest:

When a contract provides for a specific interest rate, the postjudgment interest will be the lesser of: (a) the rate specified in the contract or (b) 18% a year. Here, the parties' contract provides that 1.5% interest will be paid a month on amounts that are thirty days past due for goods delivered. Inasmuch as the Westlake/CCP contract calls for monthly compounding of interest, the rate specified in the contract exceeds eighteen percent a year. Westlake is thus entitled to prejudgment interest at the lesser statutory rate of eighteen percent a year, which is exactly the rate specified in the final judgment.

*Id.* (citation omitted).

A similar clause appeared in the contract in *DeBoer v. Attebury Grain, LLC*, 684 S.W.3d 520 (Tex. App.—Eastland 2024, no pet.). There the contract referred to an 18% rate on "any balance remaining unpaid" after 30 days:

SELLER may permit BUYER to make purchases on credit from time to time. The price for goods and services purchased will be due upon receipt of invoice.

BUYER agrees to pay a finance charge at the rate of 18% per annum (1.5% per month) on any balance remaining unpaid after the 30th day following invoice date.

6

*Id.* at 529–30. The Eastland court found that this language triggered the 18% rate.[2]

This holding comported with a similar holding from the same court a decade earlier.

*See Jones v. R.O. Pomroy Equip. Rental, Inc.*, 438 S.W.3d 125, 132 (Tex. App.—

Eastland 2014, pet. denied) (applying 18% rate where contract for equipment rental

provided for interest on unpaid balances and stated: "All past due balances subject

to the maximum amount of interest allowed by law").

The Dallas court reached a similar conclusion in *Accent Builders, Inc. v.*

*Session*, No. 05-23-00675-CV, 2024 WL 3100696 (Tex. App.—Dallas June 24,

2024, no pet.) (mem. op.). There the contract spoke of an 18% rate on "amounts"

past due:

> 3. All invoices submitted by Company to the Customer for the Project are due immediately upon receiving a pay request of value of work completed. Any invoices not paid by Customer to Company within thirty days are considered past due. Interest and finance charges on any amounts past due will be charged at the maximum allowable by law, or at 18% per annum whichever is less.

---

[2] The court explained: "[T]he credit agreement does not appear to be confined to a single specific transaction. For example, it references 'future purchases,' 'purchases on credit from time to time,' and raising or lowering credit limits 'from time to time.' Thus, the credit agreement's terms are continuing and applicable to future transactions between the parties. With no amendment or similar document of differing terms subsequently entered into by the parties, the trial court as the finder of fact was free to conclude that Appellant, and a buyer under the circumstances, would have understood the continuing terms upon which credit would be extended in any transaction for goods and services to be at eighteen percent interest on all outstanding balances, under which the parties had, from the outset, agreed to do business." *DeBoer v. Attebury Grain, LLC*, 684 S.W.3d 520, 530 (Tex. App.— Eastland 2024, no pet.). "We conclude that the parties agreed to a rate of eighteen percent for prejudgment interest." *Id.*

4. Should default be made in payment of this contract, charges shall be added from date thereof at the maximum allowable by law, or at 18% per annum whichever is less and if placed in the hands of an attorney for collection, all attorney's fees, and legal filing fees shall be paid by Customer accepting said contract.

*Id.* at *5.

Citing the Eastland court's *DeBoer* decision, the Dallas court found an 18% rate to be appropriate: "Accent secured a money judgment against Teklu, and the contract with Teklu set an eighteen percent interest rate as interest finances charges for any amounts past due or in the event of payment default. We conclude the parties agreed to a rate of eighteen percent for pre-judgment interest." *Id.*

For the reasons stated in *Cook Composites* and essentially reiterated in *DeBoer*, *Accent*, and *Jones*, we hold that the trial court was correct when it found the rate to be 18%.[3]

## Supersedeas

Intertwined with the interest rate dispute is a dispute over the amount of the supersedeas bond. Montrose 15 initially superseded the judgment by posting a bond for $274,000, which equaled the amount of compensatory damages awarded in the

---

[3] At oral argument, appellants approached the interest rate issue from a fresh vantage point, namely that the late payment fees were already assessed in the damages awarded in the judgment. We acknowledge this argument and have considered it fully, but we remain convinced that the outcome is controlled by the legal rule found in cases like *Cook Composites* and *Jones*.

judgment plus about $10,000. On the landlord's motion, the trial court increased the required security amount to $447,044.73.

Montrose 15 filed an emergency motion in this Court to stay the trial court's order increasing security and to order the trial court to reconsider the amount of security. Montrose 15 asserted that the increased amount erroneously included prejudgment interest and set a rate of 18% for postjudgment interest. The landlord responded and disputed both assertions. We temporarily stayed enforcement of the trial court's order pending a final review of the emergency motion or final disposition of this appeal.

While the stay was pending, the landlord filed a motion in this Court to increase the amount of security by about $30,000 to cover postjudgment interest that had accrued beyond the amount of Montrose 15's posted bond. In short, both sides dispute how much security is required to suspend enforcement of the judgment.

This dispute over the amount of security primarily turns on our resolution of Montrose 15's appellate issue. Central to both sides' supersedeas issues is the proper rate of prejudgment and postjudgment interest. We concluded above that the proper rate is 18%. This conclusion on the merits should allow the parties to resolve the dispute over the proper amount of security. To the extent any party desires to modify the amount of security required to suspend execution of the judgment, the trial court retains jurisdiction after its plenary power expires to do so. TEX. R. APP. P.

24.3(a)(2). The trial court's ruling is reviewable by motion filed in the court of appeals. TEX. R. APP. P. 24.4(a)–(b). We lift the stay and dismiss any pending Rule 24 motions without prejudice to refiling in the trial court.

## Conclusion

We affirm the judgment, lift the stay on the trial court's November 3, 2025 order to increase security, and dismiss any pending Rule 24 motions without prejudice.

David Gunn
Justice

Panel consists of Justices Guerra, Gunn, and Morgan.